[L. A. No. 18084.   In Bank.   Feb. 25, 1943.]

EDITH LARRABEE, Plaintiff and Respondent, v. MARY
TRACY et al., Defendants and Respondents; ERNEST
P. WELLMAN, Individually and as Executor, etc., Ap-
pellant.

Winterer & Ritchie and L. S. B. Ritchie for Appellant.

J. B. Mandel, Dee Holder and Robert M. Kaufman for Respondents.

GIBSON, C. J.—The respondent, Edith Larrabee, alleging that an order of the probate court had been obtained by extrinsic fraud, brought this action in equity for relief. The order in question, made in the Estate of Mark H. Rice, decreed that a legacy to Kate Chase, mother of the respondent, had lapsed and that appellant Wellman as residuary legatee was entitled thereto.

The will of Mark H. Rice was admitted to probate September 1, 1931. By its terms one-sixth of decedent's estate was given to his cousin Mary Tracy, one-sixth to his cousin Kate Chase, one-third to three charities, and the residue to appellant who was named as executor. In October, 1931, appellant learned that Kate Chase was dead and that her daughter, Edith Larrabee, lived in Hardwick, Vermont. Appellant then wrote to respondent stating "a client of mine who is related was anxious to get in touch with your mother . . . we would appreciate your informing us when your mother passed away and where she was living at the time of her passing." He also inquired concerning Mary Tracy. The requested information, including the fact of her mother's death nine years before, was furnished by respondent on November 5, 1931. No reply was made to this letter until March 8, 1932, when appellant wrote to respondent inquiring as to her knowledge of Mark H. Rice and the relationship of her mother to him; also whether she was the only child. Respondent immediately replied that she was the only child and that Mark Rice and her mother were cousins.

On March 15, 1932, appellant informed respondent of the death of Rice and sent her a copy of the will, stating in his letter that the one-sixth interest left to her mother "we think will revert to you." In response to a request for information concerning the estate, appellant sent respondent a copy of the inventory and advised her that in addition there was a trust fund which "will be distributed to the beneficiaries named in the will, which is your mother and your aunt, and the charitable institutions and myself. . . ." Appellant also stated that there was not sufficient cash to pay inheritance taxes and that a sale of assets did not then seem advisable. There was no further correspondence for over two years, when appellant answered a request for information made on behalf

of respondent as follows: "you may be assured that everything is being done in the interest of the beneficiaries under the will and am just as anxious for distribution as anyone, but it is impossible at the present time owing to the condition of the market for sale of the property. . . . Mrs. Larrabee's mother's share may revert to her by law of succession. . . . "

Three years more passed and in July, 1937, respondent wrote to appellant insisting that her share of the estate be distributed to her. Appellant's secretary replied during appellant's absence. "Before Mr. Wellman went north, he stated it was his intention to file a petition shortly for rateable distribution, and in; this connection wish you would kindly procure a certified copy of your birth certificate, and also a certified copy of your mother's death certificate, that same may be filed with the petition, showing proof of death and your heirship. . . . I will call Mr. Wellman's attention to your letter on his return." Respondent's letter and the secretary's reply were read to appellant by his secretary.

On September 1, 1937, Mr. Noonan, an attorney of Portland, Maine, wrote to appellant informing him that Mrs. Larrabee had received a citation affecting property of the Rice Estate located in Riverside County, California, and, referring to her great need, asked for an early distribution to Mrs. Larrabee of her share of the estate. Mr. Noonan testified that he never received an answer to this letter, although appellant claims he replied thereto on September 17, 1937, stating he intended shortly to file an account current for ratable distribution, and for a construction of the will. Appellant does not claim, however, that the letter informed Mr. Noonan that he intended to represent to the court that the legacy to Kate Chase had lapsed and that the same should be distributed to him as residuary legatee.

On October 1, 1937, appellant filed his third account current and included therein a petition for construction of the will and for ratable distribution, alleging that Kate Chase having predeceased the testator whose will disinherited all persons other than those specifically named therein, including the descendants of Kate Chase, "the devise and legacy to said Kate Chase should lapse and become a part of the residue" of the estate. The petition prayed for the distribution of $3,000 cash as follows: To Mary Tracy, $500; to the three named charities, $1,000; and to appellant, $1,500. Notice

of the filing and hearing of the account and petition was posted by the clerk of the court upon the bulletin board of the courthouse in Los Angeles County. No other notice was given to respondent. On October 21, 1937, the court made an order settling the third account current and granting the petition. It decreed that respondent was not entitled to any part of the estate.

A check for $500 was mailed to Mary Tracy in payment of her legacy with a letter from appellant dated December 28, 1937. Upon learning of the receipt of this money by her aunt, respondent contacted her attorney in Maine who thereupon engaged an attorney in Los Angeles to investigate the matter. The present action followed. Wellman demurred to the complaint and his demurrer was sustained without leave to amend. Judgment was entered in his favor from which Mrs. Larrabee appealed. The judgment was reversed on appeal, with directions to the lower court to overrule the demurrer, the appellate court holding (39 Cal.App.2d 593, 600 [103 P.2d 61]) that under the allegations of the complaint "it is apparent that the fraud and deceit of [Wellman] prevented [Mrs. Larrabee] from either appearing in court or presenting her side of the controversy." The court noted, with reference to Wellman's argument that Mrs. Larrabee was deprived of any interest in the estate by the disinheritance clause of the will, "that appellant does not base her claim to an interest in the estate as an heir at law of testator, but rather upon her status as a lineal descendant of Kate Chase, under the provisions of section 92 of the Probate Code. . . . "

After a hearing the trial court found that the order of the probate court "was obtained by extrinsic fraud worked by the defendant, Wellman, and . . . that Edith Larrabee is entitled to take said bequest by right of substitution," and gave judgment for respondent herein.

On appeal from this judgment, Wellman urges, first, that the share to Kate Chase lapsed by reason of her death prior to that of Mark Rice, contending that the disinheritance clause shows the testator intended to exclude all persons except those specifically named in the will. This clause reads as follows: "I hereby generally and specifically disinherit each, any and all persons whomsoever, claiming to be or who may be lawfully determined to be my heirs at law, except as otherwise mentioned in this will." The effect of this clause

was considered on the prior appeal, but whether or not that decision is determinative of the question now raised, it is clear that appellant's contention is unsound. Appellant concedes that were it not for the above clause respondent, as the daughter of Kate Chase, would be entitled to her share pursuant to section 92 of the Probate Code. This section provides that a devise or bequest to any kindred of the testator who is dead at the time the will is executed but leaves lineal descendants surviving the testator, does not lapse, but that such descendant takes the estate in the same manner the devisee or legatee would have done had he survived the testator. Although a will may provide against the operation of this statute, the disinheritance clause in Mark Rice's will does not do so. It purports to exclude only those claiming as *heirs at law* of the *testator,* while respondent relies solely upon her status as the *lineal descendant of Kate Chase* under section 92, *supra.* As said in *Estate of Tibbetts,* 48 Cal.App. 2d 177, 179 [119 P.2d 368]: "the persons acquiring rights under said statute acquire such rights as 'statute-made' devisees or legatees. . . . Such rights are acquired regardless of whether such persons are or are not heirs of the testatrix." (*Cf. Estate of Pew,* 10 Cal.App.2d 41, 43-45 [50 P.2d 1045]; *Larrabee* v. *Tracy,* 39 Cal.App.2d 593, 600-601 [103 P.2d 61].)

It was determined upon the prior appeal that respondent's complaint states a cause of action for extrinsic fraud, and the only problem now before us with regard to this issue is the sufficiency of the evidence to support the judgment. It has long been recognized in California that equity will grant relief against a judgment on the ground that extrinsic fraud or mistake deprived the unsuccessful party of an opportunity fully to present his case or prevented a fair adversary proceeding. (*Olivera* v. *Grace,* 19 Cal.2d 570 [122 P.2d 564]; see *Westphal* v. *Westphal,* 20 Cal.2d 393, 397 [126 P.2d 105], and cases there cited.) It is sometimes difficult to apply this general principle in a particular situation, and whether or not a plaintiff has shown such grounds that equity ought to afford relief must depend upon all the facts in each case. (*Cf.* 3 Freeman on Judgments [5th ed., 1925], sec. 1233, pp. 2570-2571.)

The evidence shows that appellant led respondent to believe that she was entitled to the share of the estate her

mother would have received had she survived the testator, and that distribution would be made accordingly as soon as a fair price could be obtained for the real property in the estate. In correspondence covering a period of over five years appellant never at any time indicated there was any question concerning respondent's right to be substituted in her mother's place. Appellant seeks to justify this conduct by claiming that he "erroneously believed" that the bequest and devise to Kate Chase "reverted" to respondent upon the death of Kate Chase and that it was not until about the time the petition for distribution was filed that he "was advised and determined" that he was in error. This, of course, does not excuse appellant's failure to notify Mrs. Larrabee that he had changed his position and intended to ask the court to distribute to himself the legacy Mrs. Larrabee had been led to believe she would receive. Without informing Mrs. Larrabee of his intentions, appellant presented his adverse claim to the probate court stating as a fact that her share had lapsed. Appellant prosecuted his petition knowing full well that respondent would not be in court to challenge his claim to her share of the estate. Wellman's conduct effectively prevented Mrs. Larrabee from obtaining a fair adversary hearing and, in our opinion, affords ample justification for the granting of equitable relief. As executor of the estate and its residuary legatee appellant had a clear duty to refrain from taking an unfair advantage of the impression he had created. An executor has numerous fiduciary obligations to the beneficiaries of the estate. In 1 Scott on Trusts (1939) it is stated (sec. 6, p. 48) : "An executor is often called a trustee; and in the broad sense of the term so he is. . . . The relation between an executor or administrator and the legatees and distributees, like that between a trustee and the beneficiaries of the trust, is a fiduciary relation." In *Estate of Conkey,* 35 Cal.App.2d 581, 585 [96 P.2d 383], the court said an executor "is an officer of the court and occupies a fiduciary relation toward all parties having an interest in the estate." (See, also, 3 Schouler on Wills, Executors and Administrators [6th ed., 1923], sec. 1397, p. 1676; 11A Cal.Jur. 75-77; 11B Cal.Jur. 208, 212; 21 Am.Jur. 372-375.) A number of decisions have applied this principle in cases involving extrinsic fraud. Particularly applicable is the language in *Bacon* v. *Bacon,* 150 Cal. 477 [89 P. 317]. The court, holding that extrinsic fraud or mistake existed where probate plead-

ings had understated the amount of a legacy, and the legatee, relying upon the executor's statements, failed to appear at the distribution, said at page 489: "Executors occupy trust relations toward the legatees, and are bound to the utmost good faith in their transactions with the beneficiary. . . . They were also residuary legatees, and hence whatever was lacking in full payment to the plaintiff was so much gained to them." In *Campbell-Kawannanakoa* v. *Campbell*, 152 Cal. 201, 210 [92 P. 184], it was said that a common case of extrinsic fraud is where a party is deprived of his opportunity to be heard "by some fraudulent artifice or breach of fiduciary duty on the part of the prevailing party." In 3 Freeman on Judgments, *supra*, section 1235, pages 2575-2576, the author declares that if there is a duty to speak because of a trust or confidential relation, a failure to do so is obviously a fraud for which equity may afford relief whether such fraud be regarded as extrinsic or an exception to the extrinsic fraud rule. And extrinsic fraud or mistake has uniformly been found where the executor conceals from the court the existence of certain heirs or fails to account for some of the assets of the estate, at the same time neglecting to give proper notice to the interested parties. (See, for example, *Purinton* v. *Dyson*, 8 Cal.2d 322 [65 P.2d 777, 113 A.L.R. 1230]; *Simonton* v. *Los Angeles T. & S. Bank*, 192 Cal. 651 [221 P. 368]; *Bacon* v. *Bacon, supra*.)

While it may be that appellant would not have been guilty of a breach of duty had he given respondent actual notice that he intended to dispute her right to the legacy, allowing sufficient time for her to obtain an attorney to represent her in the probate hearing, it would be unconscionable for a court of equity to hold that, under the circumstances of this case, he had fulfilled his obligations by compliance with the statutory requirements of posting notice at the courthouse. In *Aldrich* v. *Barton*, 138 Cal. 220 [71 P. 169, 94 Am.St.Rep. 43], the court held sufficient against demurrer a complaint charging that trustees under a will fraudulently presented a false account after posting notice of the hearing for ten days but without the actual knowledge of the beneficiary, who was a resident of Hawaii.

The appellant, having led respondent to believe that she was entitled to a share of the estate and that distribution would be made accordingly, was under a duty to give actual

notice of his change of position, and cannot rely on mere compliance with the statute by posting a notice which he knew would not give actual notice.

The judgment is affirmed, costs on appeal to be assessed against appellant personally without any right of reimbursement from the assets of the estate.

Shenk, J., Curtis, J., Edmonds, J., Carter, J., Traynor, J., and Peters, J. pro tem., concurred.