[Civ. No. 7613.   Third Dist.   June 14, 1949.]

W. R. HAYTER, Respondent, v. BERTHA A. FULMOR, Appellant.

Harry W. Falk for Appellant.

Thomas Cotter and Michael McHugh for Respondent.

THOMPSON, J.—The defendant has appealed from a judgment of $2,106, which was rendered against her in a suit for damages for fraud exercised in procuring plaintiff to execute a written contract of employment as her agent to go to Alaska and sell properties to which she positively claimed title and ownership, when in fact she knew, or was charged with knowledge, that she did not own a substantial portion thereof. The contract required plaintiff to first sell the properties to which the defendant had no title before he was permitted to dis-

pose of any of the other land. Relying upon such misrepresentations, plaintiff signed the contract and went to Alaska, incurring costs and expenses before he learned of the falsity of her statements regarding her ownership and title to the properties. He was precluded by the terms of the contract from disposing of any of the properties.

The record shows that plaintiff resides at Crescent City, California. The defendant lives at Eureka. Captain Albert Filmore, a cousin of the defendant, lived at Seldovia, Alaska. Prior to his death he filed on a government homestead, consisting of 160 acres of land in Sections 31 and 32, Township 8 South, Range 14 West, S. M. Alaska, which included lands claimed by a man by the name of Jones and another man by the name of Morris, both of which tracts the defendant positively told plaintiff she owned. It also included a portion of the townsite of Seldovia. Albert Filmore died February 13, 1919. By the terms of his will the 160-acre homestead tract was devised to the defendant. His estate was probated in Alaska. The final decree, which was rendered July 3, 1932, distributed to the defendant the homestead property. The defendant made final proof in the United States Land Office July 23, 1930, on 91.86 acres only of said land. She previously relinquished her claim of title to Lots 1, 2, 3, 4 and 5 of Secton 31 of that homestead property, which included a portion of the townsite of Seldovia. Her title to the balance of the 160-acre homestead, comprising 91.86 acres of land, was confirmed by the United States Land Office.

In response to defendant's advertisement for sale of her Alaska land, the plaintiff met her in the office of her attorney, Kenneth D. Sevier, at Eureka, about November 18, 1940, and discussed with them the proposition of his going to Alaska as her agent to sell the land. In response to the inquiry at the trial of this case as to whether she then told him she owned the entire tract of land in Sections 31 and 32, the plaintiff replied, ''Absolutely, yes, sir.'' He also testified that at no time did she tell him she had waived or relinquished title to any portion of the original 160-acre tract filed upon by her deceased cousin Albert Filmore. The record discloses the following testimony in that regard:

''Q. Now when Miss Fulmor made these representations to you with respect to which you have testified did she ever indicate to you that the Albert Filmore application as originally made for homestead had been denied or changed in any way? A. She did not. Q. Did she ever mention the fact that she, as

Bertha Fulmor, had applied for a homestead? A. Yes, sir, Albert Filmore's homestead. . . . Q. And did she ever state to you that she had relinquished any portion of the Albert Filmore homestead? A. She never did. . . .''

Yet the photostatic copy of the United States Land Office record shows that on ''March 12, 1923, the entrywoman [Miss Fulmor] filed a relinquishment of all her right, title and interest to said Lots 1, 2, 3, 4 and 5 Sec. 21.''

During plaintiff's interview with the defendant he was shown maps and diagrams of Sections 31 and 32 of Township 8, in which the lands were located, and she pointed out the lots and parcels which she claimed to own. She said nothing to him of her previous relinquishment to portions of those properties. On the contrary, she led him to believe that she owned the entire Albert Filmore homestead tract.

As a result of their conference, the respective parties executed a written contract, November 18, 1940, by the terms of which the defendant employed plaintiff as her agent to sell all of her designated Alaska property, which she claimed she owned, in consideration of specified percentages of the proceeds of such sales, to be paid to plaintiff for his services. That contract provides in part:

''      .      .      .      .      .      .      .      .      .

''Whereas, the party of the first part is the owner of certain real property situated in the village of Seldovia, Seldovia Precinct, Third Division, Territory of Alaska. A portion of said property is in the possession of a Joe Jones who operates a pool room, bar room and dance hall. Another portion of said property is in the possession of a man named Morris who operates a store thereon.

''      .      .      .      .      .      .      .      .      .

''Either the portion now in the possession of the man named Morris or the portion in the possession of Joe Jones is to be sold first. . . .

''All the remaining property then owned by the party of the first part shall be sold as one parcel, and the party of the second part is to receive ten (10) percent of the net proceeds of said sale as compensation for his efforts in effecting same.

''The party of the second part is to make a search of the title to the property owned by the party of the first part, and if any steps are necessary toward clearing the same, he shall at once proceed to do so at his own expense, it being understood that the fifty (50) percent allowed him upon the first sale

shall reimburse him for any moneys advanced by him for that purpose. . . ."

Pursuant to said contract of employment, and in complete reliance upon said representations by defendant that she owned all of said land, the plaintiff went to Alaska, employed an attorney, interviewed the interested parties and investigated the public records of said land. He then discovered, and so testified at the trial, that the "Joe Jones property," which was one of the properties required to be first sold, was located on lot two of block thirty-four of the townsite of Seldovia, to which townsite the defendant had relinquished her claim of title. The townsite was not included in the United States patent to the 91.86-acre homestead tract to which the defendant received title in 1930. She had previously waived her claim to that Jones property, and failed to inform plaintiff of that fact.

With respect to the Morris property referred to in the contract, which is the other tract of land required to be first sold before other properties could be disposed of, the plaintiff testified that "The Morris *residence* is in the townsite." The defendant had relinquished her claim of title to that portion of the townsite. There is evidence that the Morris store building is situated across an alley upon the defendant's 91.86-acre tract to which she was granted a patent. But it thus appears that at least a portion of the Morris property to which the defendant had relinquished her title did not belong to her. She failed to call plaintiff's attention to that fact. The plaintiff also testified that he discovered that Morris held his property by a quitclaim deed from one Antone Johannson, and that he had acquired title thereto by adverse possession.

After having discovered that the defendant, contrary to her representations to plaintiff, had waived her title to the Jones property and to a portion of the Morris property, which lots were required by the contract to be first sold, and that she did not own those lands, the plaintiff asked the defendant to modify the contract to permit him to sell the balance of the lands, which she refused to do. The plaintiff returned to Eureka, and this suit for damages was then commenced.

The trial court adopted findings favorable to the plaintiff, and determined, in effect, that the defendant, by her written instrument, previously waived her claim of title to a portion of her Alaska land, including the Jones and Morris properties, and that she did not own the last-mentioned properties; that she nevertheless deliberately, wilfully and positively repre-

sented to the plaintiff that she owned all of said 160-acre tract of land, including the Jones and Morris properties, and thereby induced plaintiff to execute the written contract, requiring him to first sell the Jones and Morris lands before he could dispose of any of the balance of the Alaska property, and that in reliance upon her statements of ownership of all of said properties, he executed the contract and expended time and money in going to Alaska, as her agent, to sell said land, to his detriment in the sum of $2,106. The court further found that the defendant made said false statements of ownership of said land, without reasonable ground to believe they were true.

The appellant contends that the evidence fails to support the findings and judgment, for the chief reason that plaintiff did not rely on defendant's claim of ownership of the properties since he had independent knowledge of the Albert Filmore homestead claim, and that he was charged with knowledge of the actual titles which were disclosed by the public records thereof, to which he had access. In support of those assertions the appellant cites numerous authorities among which are *Andrew* v. *Bankers & Shippers Insurance Co. of New York,* 101 Cal.App. 566 [281 P. 1091], and 3 Restatement of the Law of Torts, page 66, section 528. Those authorities, however, are readily distinguishable from the facts of this case.

In a former appeal from a previous judgment in this case, rendered pursuant to an order sustaining a demurrer to the complaint without leave to amend the pleading, this court reversed the judgment and held that since the defendant executed to plaintiff a general power of attorney authorizing him, as her attorney in fact, to sell and convey the Alaska property, it is immaterial that the plaintiff was not a licensed real estate broker. (*Hayter* v. *Fulmor,* 66 Cal.App.2d 554 [152 P.2d 746].) That issue is not involved on this appeal.

Although there is a conflict of evidence regarding the defendant's statements of ownership of the property, we are satisfied there is ample proof to support the findings and judgment involved on this appeal. It satisfactorily appears that the defendant, with full knowledge that she had previously relinquished and waived her claim of title to a material portion of the Alaska lands involved in this suit, to wit, the Jones and Morris properties, nevertheless positively and intentionally misrepresented to plaintiff that she owned all of said properties and thereby induced him to execute the contract and accept employment as her agent to go to Alaska

and sell the properties. It also appears that the plaintiff relied upon said statements as true, and went to Alaska, but was prevented from disposing of any of said land by discovering that defendant did not own the Jones or Morris tracts, which, by the terms of the contract were required to be first sold before other lands could be disposed of, and that the defendant refused to modify the contract in that respect, or at all. Those material assertions of ownership and title to said lands, under the circumstances of this case, constituted actionable fraud which rendered the defendant liable for damages resulting therefrom.

The defendant was not warranted in representing that she owned all of the Alaska land in question, since she had previously relinquished and waived title to a material portion thereof, to wit, the Jones and Morris tracts. Actual fraud consists of acts or conduct by a party to a contract, performed with intent to deceive the other party, and may consist of "The positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true." (Civ. Code, § 1572.)

A fraudulent intent to deceive another may be inferred from a material statement which is made with full knowledge that it is false. When one deliberately makes false representations of material facts, knowing them to be untrue, the law supplies the fraudulent intent to deceive. (*Boas* v. *Bank of America National Trust & Savings Assn.*, 51 Cal. App.2d 592, 598 [125 P.2d 620]; 37 C.J.S. 259, § 22.) The defendant in this case was bound to know she did not own property, the title to which she had relinquished and waived by a formal instrument in writing.

Constructive fraud, which is sometimes referred to as negligent or careless misrepresentations, may be actionable even though material misstatements are made *without a fraudulent intent to deceive*. Section 1573 of the Civil Code defines constructive fraud as that which consists:

"1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or anyone claiming under him, by misleading another to his prejudice, or to the prejudice of anyone claiming under him; or,

"2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud."

In the present case we are satisfied the defendant was guilty of actual fraud in positively representing to the plain-

tiff that she owned all of the Alaska property referred to in the written contract, when she knew, or should be charged with knowledge, that she did not own all of it because she had previously relinquished her claim of title to a substantial portion of it. Her knowledge and her intent to deceive and defraud the plaintiff are inferred by her previous relinquishment of her title to portions of the property, and by her subsequent refusal to permit a modification of the contract so as to authorize plaintiff to sell the balance of said property.

The defendant was not relieved of liability for her false statements of ownership of the properties by her contention that plaintiff once lived in Seldovia, and knew of the Albert Filmore homestead claim, or that he was charged with knowledge of the true titles to said properties because they were matters of public record. It is true that plaintiff once lived at Seldovia, and that he had heard of the Albert Filmore claim, but it appears that he had no knowledge of what properties were contained therein. He had lived in Mariposa County, California, for some time before the contract was made. It was executed in 1940 at Eureka, in the office of defendant's attorney. There is no evidence that plaintiff had any previous knowledge of the extent or location of the Albert Filmore claim. Nor was he charged with knowledge of the record titles to said properties in the Territory of Alaska. Those public records were not readily accessible to him. He had a right to rely upon her positive statements of ownership and title to the lands. He had no reason to disbelieve her representations of ownership.

It has been frequently held that when a purported owner makes material false statements with respect to his ownership or title to real property, with the intent to deceive another person, he may be held liable for damages resulting therefrom, in spite of the fact that an inspection of the public records may disclose the falsity of such statements. That is especially true when the public records are at a remote place to which the party does not readily have access. Ordinarily, when positive statements of ownership of property are deliberately made to one who has neither knowledge nor reason to disbelieve them, if they are false and detrimental they may furnish the basis of an action for damages for fraud. (*Seeger* v. *Odell,* 18 Cal.2d 409, 414 [115 P.2d 977, 136 A.L.R. 1291]; *Rogers* v. *Warden,* 20 Cal.2d 286 [125 P.2d 7]; *Hargrove* v. *Henderson,* 108 Cal.App. 667, 674 [292 P. 148]; *Jackson* v.

*Meinhardt,* 99 Cal.App. 283, 287 [278 P. 462]; 37 C.J.S. 281, § 34c; 23 Am.Jur. 816, § 50.) In the Seeger case, *supra,* it is said at page 414, that:

". . . If, however, the opinion or legal conclusion misrepresents the facts upon which it is based or implies the existence of facts which are nonexistent, it constitutes an actionable misrepresentation. (Rest. Torts, sec. 539; see cases cited in 12 Cal.Jur. 727, 728.) Negligence on the part of the plaintiff in failing to discover the falsity of a statement is no defense when the misrepresentation was intentional rather than negligent. (See cases cited in 12 Cal.Jur. 758, 759; Prosser, Torts, 748.) As a general rule the negligence of the plaintiff is no defense to an intentional tort. (See Prosser, Torts, 402.) The fact that an investigation would have revealed the falsity of the misrepresentation will not alone bar his recovery (Rest. Torts, sec. 540; see cases cited in 12 Cal.Jur. 758, 759), and it is well established that he is not held to constructive notice of a public record which would reveal the true facts. (Rest. Torts, sec. 540(b); see cases cited in 12 Cal.Jur. 759, 764; Prosser, Torts, 750, 751.) The purpose of the recording acts is to afford protection not to those who make fraudulent misrepresentations but to bona fide purchasers for value."

We conclude that the evidence in this case amply supports the findings and judgment. There appears to be no doubt the plaintiff was deceived by defendant's positive statements of her ownership of material portions of her Alaska property, and that he thereby suffered substantial damages. The amount of the judgment is not challenged.

For the foregoing reasons the judgment is affirmed.

Adams, P. J., and Peek, J., concurred.