[Civ. No. 15402. First Dist., Div. One. Mar. 23, 1953.]

JOHN SOUZA CARDOZO, Appellant, v. BANK OF AMER-
ICA NATIONAL TRUST AND SAVINGS ASSOCIA-
TION (a National Banking Association), as Executor,
etc., Respondent.

834

John H. Machado for Appellant.

Lucille F. Athearn for Respondent.

BRAY, J.—Plaintiff appeals from a judgment in favor of defendant in a fraud action to establish a trust in assets of the estate.

QUESTION PRESENTED

Does the evidence support the court's finding of no extrinsic fraud?

FACTS

Taking the evidence and the reasonable inferences therefrom most strongly in favor of defendant, as we are required to do, the facts are as follows:

Mary Cardozo's husband, Jorge, died January 29, 1938, a resident of San Mateo County. He left a will naming Mary as executrix and giving her a life estate in all his property, with full power, however, to sell, convey, or expend, and with remainder over to plaintiff, his nephew, residing in the Azores Islands, Republic of Portugal. Mary knew plaintiff's address as she had written letters to him theretofore. On February 8th, Mary wrote plaintiff that his uncle had died on January 29th. February 24th, Mary signed and filed a petition prepared by her attorney for the probate of the will and her appointment as executrix. The petition stated that plaintiff's address was unknown. Notice of the hearing was mailed pursuant to section 328, Probate Code, to plaintiff, addressed, however, to Redwood City, California. No notice of any of the probate proceedings was ever sent plaintiff nor did he have any notice of them during their pendency. February 24th, the same day she signed the petition for probate, Mary sent plaintiff a registered letter telling him that his uncle left a will leaving her a life estate and that the remainder be divided into

two equal parts, one for him and one for her family. March 14th, the will was admitted to probate, and Mary qualified as executrix. That same day in her attorney's office she executed a will leaving half her estate to plaintiff and giving his address. Her attorney could not recall what she stated to him about plaintiff's address at the time he prepared the petition for probate, nor what she said when she asked him to prepare her will. He presumed that he asked her for the names and addresses of her heirs. May 2d, Mary wrote plaintiff stating that she was employing a 12-year-old child to live with her. She also stated: "Your godfather made his will for me to enjoy everything as long as I live and upon my death all the debts to be paid and that the rest be divided in two parts equal, one part for you and one part for my family. . . ." This was erroneous in that the will left all the remainder, if any, to plaintiff. August 30th, her petition for distribution was filed. In it, although she stated that Jorge died testate, she did not set forth the terms of the will, but merely stated that she was his next of kin and sole surviving heir and entitled to succeed to all of his estate and prayed that it be distributed to her. The attorney testified that he had a secretary at that time who prepared all the probate proceedings. He did not recall ever seeing the petition. The petition alleged that the whole of Jorge's estate was the community property of him and Mary. The inventory and appraisement listed the assets as community property. October 3, 1938, the decree of distribution was entered. It followed the allegations of the petition, found that due notice of hearing had been given, and distributed the entire estate to Mary.

In 1946, D. J. Macedo, plaintiff's attorney in fact, visited plaintiff in the Azores and plaintiff told him that he had no knowledge of any probate proceedings. September 16, 1946, Mary wrote a holographic will leaving nothing to plaintiff. In May, 1948, Mary, at the age of about 86, was adjudged incompetent, and the Bank of America was appointed her guardian. July 12, 1948, she died and the bank was appointed her executor. Plaintiff brought this action to establish that the executor was holding the property of Jorge's estate in trust for him. He alleged that Mary fraudulently concealed the pendency of the probate proceedings from him, acted with intent to deceive him and to get the estate for herself.

## Findings

Among other matters the court found that the petition for probate of Jorge's will stated that plaintiff's address was unknown, although it was then known to Mary; that formal notice was not given him, but that Mary wrote plaintiff advising him of Jorge's death, giving him ample information as to the death and the estate to put plaintiff on notice; that plaintiff had actual notice of the foregoing; that the failure to give formal notice to plaintiff was caused by Mary's advanced age, lack of complete literacy and ability to make herself understood, which resulted in error in communication between Mary and her attorney; that she did not intend to defraud plaintiff; perpetrated no fraud, extrinsic or otherwise, on plaintiff; that the decree of distribution in Jorge's estate has become final and plaintiff has no interest in the assets of the estate. It also found that reciprocal recognition of inheritance exists between Portugal and the United States. The court refused to find that all of the property of Jorge's estate was community property or that the only traceable assets in Mary's estate coming from Jorge's estate are certain Bank of America and Transamerica shares. It is not necessary to discuss the question of the character of Jorge's estate or the amount of the assets thereof in Mary's estate. Defendant concedes a small amount of corporate stock is identifiable as coming from Jorge's estate.

## Sufficiency of the Evidence

The evidence shows unquestionably that the statement in Mary's petition for probate of Jorge's will that plaintiff's address was unknown was incorrect as were the statements in the petition for distribution upon which the distribution of the estate solely to Mary was made. ■ While there is evidence which might have supported a finding to the effect that Mary's actions were with intent to conceal plaintiff's address to obtain the estate for herself, had the court so found, we cannot say as a matter of law that that is the only reasonable conclusion from the evidence. The facts that Mary advised plaintiff of the death of the uncle, told him of the will and her interpretation of its terms, the making of a will giving him half of her property (even though revoked by a will made six years later), her age (76 years); that her life estate included the power to consume, her partial illiterary as shown by her letters and subsequent will—all the circumstances of the case reasonably sup-

port the conclusion reached by the court that Mary's actions were not done with any intent to deceive or defraud plaintiff.

## Actual Fraud

The main question is, do Mary's acts without intent to defraud constitute extrinsic fraud? It is well established that there can be no actual fraud without intent to deceive or to induce the other party to act or not to act. (12 Cal.Jur. 808, § 65; *Hayter* v. *Fulmor,* 92 Cal.App.2d 392, 398 [206 P.2d 1101].) See the many definitions of fraud in volume 17, Words and Phrases, permanent edition, page 550 et seq. See, also, *Mercier* v. *Lewis,* 39 Cal. 532, holding that an allegation of actual fraud is not sustained by proof of mistake. Therefore, the court's finding that there was no fraud, extrinsic or otherwise, is supported by the evidence so far as actual fraud is concerned. Counsel have cited and we have found no case holding that acts which constitute extrinsic actual fraud if done with the intent to defraud constitute such if done without the intent. Thus, in the cases cited by plaintiff the intent to defraud was always present. (*Zaremba* v. *Woods,* 17 Cal.App.2d 309 [61 P.2d 976]; *Purinton* v. *Dyson,* 8 Cal.2d 322 [65 P.2d 777, 113 A.L.R. 1230]; *Olivera* v. *Grace,* 19 Cal.2d 570 [122 P.2d 564, 140 A.L.R. 1328]; *Larrabee* v. *Tracy,* 21 Cal.2d 645 [134 P.2d 265]; *Blair* v. *Mahon,* 104 Cal.App.2d 44 [230 P.2d 832]; *Sipe* v. *McKenna,* 88 Cal.App.2d 1001 [200 P.2d 61]; *Estate of Standing,* 99 Cal.App.2d 668 [222 P.2d 465, 223 P.2d 255].) In *Jorgensen* v. *Jorgensen,* 32 Cal.2d 13 [193 P.2d 728], and *Howard* v. *Howard,* 27 Cal.2d 319 [163 P.2d 439], the court found no fraud whatever.

## Constructive Fraud

But a more serious question arises in connection with plaintiff's contention that Mary bore a fiduciary relationship towards him which required her to give him notice of the probate proceedings and to act in the utmost good faith towards him. Regardless of the reasons and of her lack of intent to defraud, her failure so to do and her obtaining an undue advantage of him by her erroneous petition for distribution constituted a constructive fraud. As executrix it was her duty to notify him of the probate proceedings. ''A confidential relation existed between defendant as executrix of the will of Zuber and plaintiff as a legatee in the will. Defendant was an officer of the court and oc-

cupied the position of a trustee, holding the property devised and bequeathed for the benefit of the devisees and legatees.'' (*Blair* v. *Mahon, supra,* 104 Cal.App.2d 44, 49.) ''Constructive fraud consists: 1. In any breach of duty which, *without an actually fraudulent intent,* gains an advantage to the person in fault, or anyone claiming under him, by misleading another to his prejudice, or to the prejudice of anyone claiming under him . . .'' (Civ. Code, § 1573; emphasis added.) ''One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it.'' (Civ. Code, § 2224.) ''Executors occupy trust relations towards the legatees, and are bound to the utmost good faith in their transactions with the beneficiary.'' (*Bacon* v. *Bacon,* 150 Cal. 477, 489 [89 P. 317].) In that case the executors sent the legatee a copy of the will showing her legacy as only $2,000 when it actually was $10,000. The same mistake was carried into the decree of distribution. There the executors had no intent to deceive; they were merely mistaken. It was held that this was an extrinsic mistake preventing the legatee from exhibiting fully her case and requiring that the distributee be deemed to hold the $8,000 difference between what the legatee received by the decree of distribution and what she should have received, in trust for her. In *Larrabee* v. *Tracy, supra,* 21 Cal.2d 645, the court said (p. 651): ''In *Campbell-Kawannanakoa* v. *Campbell,* 152 Cal. 201, 210 [92 P. 184], it was said that a common case of extrinsic fraud is where a party is deprived of his opportunity to be heard 'by some fraudulent artifice or breach of fiduciary duty on the part of the prevailing party.' In 3 Freeman on Judgments, *supra,* section 1235, pages 2575-2576, the author declares that if there is a duty to speak because of a trust or confidential relation, a failure to do so is obviously a fraud for which equity may afford relief whether such fraud be regarded as extrinsic or an exception to the extrinsic fraud rule.'' ''Fraud or mistake is extrinsic when it deprives the unsuccessful party of an opportunity to present his case to the court.'' (*Westphal* v. *Westphal,* 20 Cal.2d 393, 397 [126 P.2d 105].)

 Were this an action to set aside the decree of distribution and open up the probate proceedings on the sole ground of Mary's constructive fraud in not giving plaintiff

formal notice of the proceedings, the court's finding that notice of the death and of the will put plaintiff sufficiently on notice of the probability of probate proceedings, might be supported and might justify the court in denying him that relief. But the statement made in *Bacon* v. *Bacon, supra,* 150 Cal. 477, 489, concerning the executors there, applies to the executor here: "They were also residuary legatees, and hence whatever was lacking in full payment to the plaintiff was so much gained to them. They are therefore not in any position to claim that the plaintiff, in relying on their own statements regarding the amount of the legacy, was lacking in diligence." This action is not to open up the probate proceedings in Jorge's estate; it is to declare that Mary's estate holds in trust for plaintiff that portion of Jorge's estate which she received by the decree of distribution and which should have gone to plaintiff. It is the fact that Mary as executrix, after notifying plaintiff that he had an interest in the estate, and thereby lulled him to some extent into a sense of security, secured an unconscionable advantage by having the entire estate distributed to her that entitles plaintiff to relief. The fact that she did not intend to defraud him is not important. He was just as defrauded as if she had intended to defraud him. ". . . if through accident, fraud, or mistake, the distributees are holding property under the decree, to which they are not entitled, equity will do justice, not by overthrowing the decree of distribution, but by declaring the distributees to be involuntary trustees of the rightful owners of the property. This principle is, of course, well established. [Citations.]" (*Estate of Walker,* 160 Cal. 547, 549 [117 P. 510, 36 L.R.A.N.S. 89].) "Constructive fraud often arises in transactions where there exist confidential or fiduciary relationships which have been abused by the party in whom the confidence is reposed. In such cases there may be no actual fraud, but fraud is presumed from the fact that the one in whom the confidence is reposed availed himself of that trust to obtain an advantage at the expense of the confiding party, without reference to the question of fraudulent intent." (12 Cal.Jur. p. 711, § 6.) "Constructive fraud, which is sometimes referred to as negligent or careless misrepresentations, may be actionable even though material misstatements are made *without a fraudulent intent to deceive.*" (*Hayter* v. *Fulmor, supra,* 92 Cal.App.2d 392, 398.) "The theory of a constructive trust was adopted by equity as a

remedy to compel one to restore property to which he is not justly entitled, to another. The person holding the property may have acquired it through fraud, undue influence, breach of trust, or in any other improper manner. . . .'' (*Bainbridge* v. *Stoner*, 16 Cal.2d 423, 428 [106 P.2d 423].) See *Hewett* v. *Linstead*, 49 Cal.App.2d 607 [122 P.2d 352], for discussion of intentional and unintentional acts of a distributee causing exclusion of an heir to the distributee's benefit.

*McGavin* v. *San Francisco P. O. A. Soc.*, 34 Cal.App. 168 [167 P. 182], is not applicable. There the plaintiff was represented in the estate by attorneys. The petition for and decree of distribution was erroneous because of the mistake of the attorney for the executor. The executor did not profit by the mistake, nor was any fraud shown. Error in a proceeding where the injured party has not been prevented from appearing or where the fiduciary does not gain an advantage for himself has been held, as it was held in that case, to constitute intrinsic, not extrinsic, fraud.

There is practically no difference in the situation in this case where the executor unintentionally had the entire estate distributed to her to the exclusion of plaintiff's interest therein from that in the case of *Bacon* v. *Bacon, supra*, 150 Cal. 477, where the executor unintentionally caused $8,000 less to be distributed to the heir than she was actually entitled to. Just as there, plaintiff here had the right to rely on the executrix. He was told he had an interest under the will. At no time did he have occasion for even a suspicion that Mary as executrix would not perform her duty to him, or by any action of hers would exclude him from his distributive share.

It is true, as pointed out by defendant, that had Mary intended to defraud plaintiff she could easily have done so by merely consuming Jorge's entire estate as she had a right to do under the will. That fact, however, makes her no less a trustee for plaintiff of the interest given him by the will in whatever assets of Jorge's estate Mary did not consume.

The judgment is reversed.

Peters, P. J., and Wood (Fred B.), J., concurred.