[No. F011955. Fifth Dist., Jan. 31, 1990.]

VINCENT J. SHANNON, Petitioner, v.
THE SUPERIOR COURT OF STANISLAUS COUNTY,
Respondent;
FIRST INTERSTATE BANK et al., Real Parties in Interest.

## COUNSEL

Howard, Rice, Nemerovski, Canady, Robertson & Falk, Ethan P. Schulman, Burger & Flaherty, Michael Flaherty and Kathleen M. Abdallah for Petitioner.

No appearance for Respondent.

Weintraub, Genshlea, Hardy, Erich & Brown, Randy L. Barrow, Stockton & Sadler, James L. Sadler, Sharon Green, Meyer & Mitchell and Daniel L. Mitchell for Real Parties in Interest.

## OPINION

**DIBIASO, J.**—The issue presented on this appeal is whether a receiver appointed under Code of Civil Procedure section 564 may claim the attorney-client privilege with respect to communications between the receiver and his or her special counsel. We hold the receiver is entitled to the benefit of the privilege and issue a peremptory writ of mandate to the respondent court.

### FACTS

In October 1987, Duvel, a publicly traded Delaware corporation, merged with Statewide Check Cashing, a California corporation which operated check-cashing stores and other businesses in California and Arizona. On June 29, 1988, First Interstate Bank filed a verified complaint against Duvel and its president, alleging those parties had fraudulently caused an overdraft on Duvel's account with First Interstate Bank of more than $2.7 million. According to the complaint, Duvel was insolvent or in imminent danger of insolvency so as to warrant the appointment of a receiver. The same day, pursuant to a stipulated order, respondent superior court appointed petitioner, Vincent J. Shannon (Shannon), as Duvel's receiver. Richard Azevedo, individually and in his capacity as Duvel's president, executed the stipulation.

The stipulated order appointing Shannon granted him broad authority to take over, operate, and to some extent liquidate Duvel's business. The order also required: (i) Shannon to take an oath and execute a $750,000 undertaking to the state of California for the faithful performance of his duties, both of which obligations were subsequently complied with; and (ii) the defendants to deliver to Shannon "immediately upon request all documents and things necessary and reasonable to the conduct of the Receiver's duties." Finally, respondent approved Michael Flaherty of Burger & Flaherty as counsel for the receiver.

In the course of reviewing the corporation's books and records, Shannon, a certified public accountant, concluded there was reasonable cause to believe numerous laws had been violated in the operation of Duvel and its predecessor, Statewide Check Cashing, Inc.[1] Certain documents suggested Duvel had violated federal securities laws by purchasing its own stock on the open market through nominees with money obtained from the corporation's banks.

Thereafter, Flaherty, Shannon's attorney, obtained the court's approval to associate the law firm of Howard, Rice, Nemerovski, Canady, Robertson & Falk (Howard, Rice) as special counsel to advise him on certain securities law issues raised by the receivership of Duvel. In due course, Howard, Rice expressed its opinions and conclusions in a letter to Shannon.

In late November 1988, Duvel's board of directors requested Shannon provide it with a copy of the Howard, Rice opinion letter and any other memoranda produced by the law firm. Flaherty refused, citing the attorney-client privilege. Subsequently, one of the board's attorneys directed a letter to Flaherty, again demanding Shannon disclose the opinion letter. Duvel took the position "the Howard, Rice opinion letter was prepared *for Duvel Corporation* at the request of Mr. Shannon in his capacity as receiver for the corporation." (Italics added.) This assertion evidently was premised on Duvel's belief that Shannon was its agent. Shannon again disputed Duvel's position.

Subsequently, Duvel filed a "Motion to Vacate or Modify Appointment of Receiver." In its supporting papers, Duvel argued respondent lacked jurisdiction to appoint a receiver in the action. In the alternative, Duvel sought an order directing Shannon to surrender $75,000 in corporate funds to Duvel's board of directors; the funds would enable the corporation to

---

[1] As Duvel's custodian of records, Shannon was served with a federal grand jury subpoena for all corporate files, records, and documents relating to certain banking activity over a 15-month period. The subpoena evidently was issued as a part of an ongoing inquiry by the Federal Bureau of Investigation into an alleged check-kiting scheme involving Azevedo.

defend against First Interstate Bank's lawsuit and prosecute related claims against third parties, including Azevedo. Finally, Duvel sought: "an order instructing the Receiver to deliver to the Board of Directors of the Duvel Corporation all advice, opinions and work product the Receiver has obtained from the law firm of Howard, Rice . . . ." According to Duvel, Shannon "[was] partisan to the plaintiff bank"; the Howard, Rice opinion letter purportedly discussed possible claims by Duvel against First Interstate Bank.[2]

In response to Duvel's motion, Shannon submitted an extensive declaration describing the actions taken by him as receiver. He devoted his opposition papers entirely to Duvel's motion to compel disclosure of the Howard, Rice documents. Shannon did not take a position on Duvel's request to vacate or modify the receivership, leaving it instead to First Interstate Bank to respond to that portion of the motion.

On February 2, 1989, respondent entered a tentative decision denying Duvel's motion for the $75,000 payment. According to the decision, "Duvel Corporation should not be allowed to use monies it stole . . . to pay its attorneys to defend this action or prosecute other related actions." However, respondent's tentative order did require Shannon to set aside $75,000 to be paid to Duvel's attorneys in the event Duvel was successful in its defense of the proceeding below.

At a subsequent hearing on its motions, Duvel abandoned its request to vacate the receivership. Instead, Duvel's counsel praised the job Shannon had done and expressed Duvel's desire to have him remain as receiver.

During argument on the portion of Duvel's motion which sought to compel the disclosure of the Howard, Rice materials, Duvel's counsel suggested the court review the Howard, Rice opinion letter in camera in order to assist in the decision.

Following oral argument, respondent entered a written decision granting the motion to compel disclosure of the Howard, Rice documents. Declining to review the papers in camera, it ordered broader relief than Duvel had sought: "Duvel has apparently hired Mr. Saddler [*sic*] to represent it in this

---

[2]Duvel's argument reads in full: "Aside from the unfairness of retaining counsel with DUVEL'S money and then refusing to give the Board the benefit of the advise [*sic*], one can infer from the Receiver's actions in this instance that he is not neutral, but is partisan to the plaintiff bank. The Board believes that the Howard, Rice opinion reveals possible claims and causes of action that DUVEL may assert against the Bank, and that is the principle reason for the reluctance to turn the information over to the Board. There is no justification for refusing to give the governing body of DUVEL the advise [*sic*] of the receiver's special counsel."

action; and to the extent that Mr. Shannon may also be entitled or required to hire an attorney to represent Duvel, should he decide to hire an attorney, he is directed to hire Mr. Saddler [*sic*] to do so. Further Mr. Shannon, as a neutral party, acting in the best interests of both Plaintiff and Defendant, is Ordered to give to both parties, through their attorneys, all information he has collected or will collect in his position as Receiver concerning the dealings of Plaintiff and Defendant which has [*sic*] led to this lawsuit, and/or which is [*sic*] relevant to this lawsuit. Such includes the [Howard,] Rice opinion." Thus, respondent required Shannon to disclose the Howard, Rice communications to First Interstate Bank as well as Duvel, although the bank had never requested such relief.[3]

Shannon brought this petition to contest the superior court's order directing disclosure of the Howard, Rice documents to Duvel and First Interstate Bank, Duvel's opponent in the action. Shannon contends his attorney-client privilege with Howard, Rice is traversed in each instance. We issued an order on August 7, 1989, commanding respondent to show cause why the relief prayed for in the petition should not be granted. We also stayed the portion of respondent's order which directed disclosure of information collected by Shannon as the receiver to all parties to the lawsuit.

## DISCUSSION

A receiver appointed under Code of Civil Procedure section 564 et seq. is an officer of the court, installed to deal with property which is the subject of litigation in order to preserve it for disposition in accord with the final judgment. (*Murray* v. *Etchepare* (1901) 132 Cal. 286, 287-288 [64 P. 282]; *Kreling* v. *Kreling* (1897) 118 Cal. 421, 422 [50 P. 549].) A receiver is not an agent of any party to the action, but instead is a fiduciary who, as an officer and representative of the court, acts for the benefit of all persons interested in the property. (*Security Pacific National Bank* v. *Geernaert* (1988) 199 Cal.App.3d 1425, 1431-1432 [245 Cal.Rptr. 712]; *Maggiora* v. *Palo Alto Inn Inc.* (1967) 249 Cal.App.2d 706, 712 [57 Cal.Rptr. 787].)[4]

---

[3] Respondent let stand its prior tentative ruling denying Duvel's request for corporate funds to retain counsel, stating that the retention of separate counsel for the corporation and the payment of such corresponding costs were matters within Shannon's discretion.

[4] We assume (i) the receiver was duly appointed and acting for all purposes of this proceeding and (ii) the case falls within one of the classes of cases as to which the governing statutes authorize the appointment of a receiver (Code Civ. Proc., § 564 et seq.; see, generally, 6 Witkin, Cal. Procedure (3d ed. 1985) Provisional Remedies, §§ 340-354, pp. 288-296). We further assume all the powers granted Shannon by the appointment order are proper, including a direction to apply corporate receipts to the satisfaction of First Interstate Bank's claim before it is reduced to a judgment. Moreover, the real parties have not challenged in any way the trial court's decision on their motion, so we do not address or decide any issue raised by the real parties' motion other than the portion which is the subject of the petition now before us.

■ A receiver is not immune from responsibility for his or her acts. A receiver cannot be held liable as a tortfeasor for an act done within the scope of the powers granted by the order of the court. (*Tapscott* v. *Lyon* (1894) 103 Cal. 297, 312 [37 P. 225].) Nevertheless, a receiver, as any fiduciary, may be surcharged and his or her surety held liable for a failure to properly carry out the duties imposed by the order of appointment. (*Stewart* v. *California* (1969) 272 Cal.App.2d 345, 351 [77 Cal.Rptr. 418].)

A receiver occupies a position generally analogous to that held by an executor in the law of probate or by a trustee in the law of bankruptcy. ■ Although appointed by the testator, a probate executor is an officer of the court, charged with the duty of managing, marshalling, and protecting the estate property during the pendency of a legal proceeding, subject to the continuing control of the court. (*Larrabee* v. *Tracy* (1943) 21 Cal.2d 645, 650 [134 P.2d 265]; *Estate of Effron* (1981) 117 Cal.App.3d 915, 928 [173 Cal.Rptr. 93].) Executors are fiduciaries, "with the usual obligations and liabilities of trustees in the broad sense of the term" towards all persons having an interest in the estate. (*Larrabee* v. *Tracy, supra,* 21 Cal.2d 645; 7 Witkin, Summary of Cal. Law (8th ed. 1974) Wills and Probate, § 317, p. 5802.) The executor is subject to surcharge or removal for failure to perform his or her obligations. (*In re Ogier* (1894) 101 Cal. 381 [35 P. 900]; *Estate of Guiol* (1972) 28 Cal.App.3d 818, 825 [105 Cal.Rptr. 35]; 7 Witkin, Summary of Cal. Law, supra, Wills and Probate, §§ 310-313, pp. 5798-5801.)

■ To assist in the discharge of his or her duties, an executor retains the absolute right to secure the services of a lawyer who acts not as the attorney for the "estate" but instead as the personal counsel for the executor. (*In re Ogier, supra,* 101 Cal. at p. 385; *Estate of Effron, supra,* 117 Cal.App.3d at p. 929.) The desires or instructions of neither the testator, the court, nor the beneficiaries may prevail over the executor's selection and retention of his counsel. (*Highfield* v. *Bozio* (1922) 188 Cal. 727, 728 [207 P. 242]; *Houghton* v. *Coberly* (1962) 201 Cal.App.2d 820, 823 [20 Cal.Rptr. 489]; *Estate of Effron, supra,* 117 Cal.App.3d at p. 929.)

■ Without doubt the attorney-client privilege applies to communications between an executor and the counsel engaged to assist in the discharge of the executor's fiduciary obligations. The executor is a "client" who "consults [the] lawyer for the purpose of . . . securing legal service or advice from him in his professional capacity." (Evid. Code, § 951.)[5] The advice given by the lawyer and the information transmitted between the executor

---

[5] We treat here the privilege of the executor in his or her capacity as such, not the decedent's privilege to which the executor succeeds upon the death of the testator and holds until final distribution. (Evid. Code, §§ 953 & 954, subd. (c).)

and his or her attorney are communications made in the course of the relationship and presumed, in the absence of contrary evidence, to be confidential. (See *City & County of S. F. v. Superior Court* (1951) 37 Cal.2d 227, 235 [231 P.2d 26, 25 A.L.R.2d 1418]; Evid. Code, §§ 917, 952.) The executor thus has a "privilege to refuse to disclose, and to prevent another from disclosing," these communications. (Evid. Code, § 954; 2 Witkin, Cal. Evidence (3d ed. 1986) Witnesses, § 1107, p. 1047.) What has been said about executors in the law of probate may generally be said, as least as to essential principles, about trustees in the law of bankruptcy. (Cf. *Commodity Futures Trading Comm'n v. Weintraub* (1985) 471 U.S. 343 [85 L.Ed.2d 372, 105 S.Ct. 1986].)

■ We cannot fathom why the foregoing analysis should not apply with equal force to the relationship between a receiver and his or her counsel. Real parties have not suggested any reason why it should not. We hold Shannon is entitled to claim the benefits of the attorney-client privilege with respect to communications between him and Howard, Rice.

■ The question arises whether a trial court may, as it purported to do here, order the receiver to disclose information otherwise subject to the privilege if the court decides that such disclosure is in the best interests of the proceeding or the parties. It may be argued the receiver must, for the common good, yield the privilege to the will of the court, since the receiver is an officer and representative of the court, and the court bears the ultimate custody over and responsibility for the receivership property. (*Maggiora* v. *Palo Alto Inn, Inc.*, *supra*, 249 Cal.App.2d at p. 712.) Although not clearly expressed in their papers, this appears to be the substance of the principal contention advanced below by real parties.

■ The California Supreme Court has expressed the underlying purposes and policies of the privilege: "The attorney-client privilege has been a hallmark of Anglo-American jurisprudence for almost 400 years. [Citations.] The privilege authorizes a client to refuse to disclose, and to prevent others from disclosing, confidential communications between attorney and client. (Evid. Code, § 950 et seq.) Clearly, the fundamental purpose behind the privilege is to safeguard the confidential relationship between clients and their attorneys so as to promote full and open discussion of the facts and tactics surrounding individual legal matters. (*People* v. *Flores* (1977) 71 Cal.App.3d 559, 563 [163 Cal.Rptr. 546].) In other words, the public policy fostered by the privilege seeks to insure 'the right of every person to freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the former may have adequate advice and a proper defense.' (*Baird* v. *Koerner* [9th Cir. 1960 279 F.2d 623] at p. 629.)

"Although exercise of the privilege may occasionally result in the suppression of relevant evidence, the Legislature of this state has determined that these concerns are outweighed by the importance of preserving confidentiality in the attorney-client relationship. As this court has stated: 'The privilege is given on grounds of public policy in the belief that the benefits derived therefrom justify the risk that unjust decisions may sometimes result from the suppression of relevant evidence.' [Citations.]" (*Mitchell* v. *Superior Court* (1984) 37 Cal.3d 591, 599-600 [208 Cal.Rptr. 886, 691 P.2d 642], fn. omitted.)

The applicable statutes clearly manifest the Legislature's intent that the privilege be absolute; the subject information is not discoverable *under any circumstances.* (Evid. Code, § 954.) Indeed, the inviolability of the privilege is such that the law prohibits even in camera revelation of a pertinent communication to the court when it evaluates a claim of privilege. (Evid. Code, § 915, subd. (a); *Carlton* v. *Superior Court* (1968) 261 Cal.App.2d 282, 292 [67 Cal.Rptr. 568].) ▮ We conclude the Legislature's unqualified protection of the privilege requires it be preserved, notwithstanding any contrary desire on the part of the court before which the receivership is pending or the parties to the action. (Cf. *Lasky, Hass, Cohler & Munter* v. *Superior Court* (1985) 172 Cal.App.3d 264, 280-282 [218 Cal.Rptr. 205].) ▮ No doubt a receiver is an agent of the court. (*Turner* v. *Superior Court* (1977) 72 Cal.App.3d 804, 813 [140 Cal.Rptr. 475].) However, we know of no rule of law which gives the principal the right to require that the agent surrender the privilege with respect to communications between the agent and his or her personal counsel.

This conclusion is no astounding proposition. In point of fact, it probably needs no articulation. To hold a receiver is entitled to claim the privilege is to necessarily decide the court is powerless to compel its waiver, irrespective of whether the disclosure would materially advance the interests of certain parties to the receivership or the efficiency of the proceedings. The decisive fact is that neither the estate, the court, nor the collection of persons who may have a claim to, or an interest in, the custodial property is the "client" of the attorney for the receiver. Though the conscientious performance of the receiver's obligations will in the ultimate analysis inure to the presumed benefit of all concerned, the result is indirect. Along the way, the receiver may come to disagree with one, or a number, or, as the case apparently is here, all of the claimants to the property.[6]

The receiver may also be required to defend against an effort by the parties to remove him or her for claimed deficiencies or wrongdoing on his

---

[6]The record discloses a significant measure of hostility between certain corporate shareholders and the receiver over the latter's handling of certain company matters.

or her part as the receiver. It is conceivable the receiver may come to take issue with, and seek review of, a ruling of the court. The receiver's ability to independently carry out his or her fiduciary responsibilities would be seriously undermined, if not wholly destroyed, were he or she unable to " 'freely and fully confer and confide in one having knowledge of the law, and skilled in its practice, in order that the [receiver] may have adequate advice. . . .' " (*Mitchell* v. *Superior Court, supra,* 37 Cal.3d at p. 599.) " '[T]he absence of the privilege would convert the attorney habitually and inevitably into a mere informer for the benefit of the [receiver's] opponent.' " (*City & County of S. F.* v. *Superior Court, supra,* 37 Cal.2d at p. 235.)

A number of other arguments in favor of permitting the court to direct the receiver to give up the privilege have been advanced in related contexts in other cases. For example, in *Lasky, Hass, Cohler & Munter* v. *Superior Court, supra,* 172 Cal.App.3d 264, 280-285, it was urged the attorney's work product privilege should not bar disclosure of certain information because: (i) the trustee's duty of full disclosure to the beneficiaries extends to otherwise privileged information; (ii) the beneficiaries of a trust are the "joint clients" of the trustee's attorney; and (iii) the trustee's attorney fees are paid out of the trust corpus. To the extent any of those assertions may be deemed to apply to a receivership, we believe the rationale expressed by the *Lasky* court in rejecting them, in the context of the attorney work product privilege, is equally applicable and needs no restatement here. (See also *Commodity Futures Trading Comm'n* v. *Weintraub, supra,* 471 U.S. 343.)

■ A court may not order disclosure of the subject communication without sufficient proof of one of the following: an exception to the privilege; a waiver of the privilege; or a lack of confidential intent. (See generally 2 Witkin, Cal. Evidence, *supra,* Witnesses, §§ 1153-1163, 1075-1082, 1126, pp. 1104-1113, 1019-1028, 1066-1067.) The proponent of the privilege has a threshhold obligation to demonstrate the "existence [of] an attorney-client relationship as to the communication in question." (*Travelers Ins. Companies* v. *Superior Court* (1983) 143 Cal.App.3d 436, 448 [191 Cal.Rptr. 871].) When met, the burden shifts to the opponent, the real parties here, to establish a cognizable basis for compelling disclosure. (Evid. Code, § 917.)

■ Shannon satisfied his initial burden of proving the existence of an attorney-client relationship between him and Howard, Rice. Indeed, the trial court specifically approved, by order dated September 8, 1988, Flaherty's association of Howard, Rice to act as special counsel with respect to "Federal and State securities issues." The order appointing Shannon gave

him broad, almost plenary[7] powers to run Duvel. The company is a publicly traded Delaware corporation. It was altogether appropriate for the receiver's principal counsel to seek specialized legal advice to assist him, at minimum, in complying with the securities laws in the management of the business. In addition, the service of federal grand jury subpoenas, relating to "securities issues" and requiring Shannon to produce corporate records, justified resort to specialized legal advice. Accordingly, unless the real parties produced evidence sufficient to support a finding by the court that the privilege was lost or not available, the court's ruling ordering disclosure of the Howard, Rice communications to Shannon cannot stand.

Our review of the record reflects an utter lack of evidence of a waiver or other ground upon which to deny the receiver the benefit of the privilege. In fact, the real parties did not contest Howard, Rice's professional relationship with either Flaherty or Shannon. The order directing disclosure was therefore in error.

The genesis of this particular dispute seems to be the handling of the First Interstate Bank lawsuit against the corporation. Apparently Duvel's directors and shareholders believe viable defenses and cross-claims exist against the bank[8] which have not and cannot be asserted because the funds necessary to pay the board's attorney are controlled by Shannon. To date he has not seen fit to make any advance to the corporation for such purposes.[9] The record is not entirely clear on the point, but it appears the corporate board, not the receiver, is charged with the responsibility for handling the defense of the bank's action, even though there are remarks in the trial court's memorandum of decision which indicate to the contrary.[10]

One may sympathize with the board's view that its hands have been tied with the same tight cord Shannon has wrapped around the corporate money bag. Yet, the receiver's comprehensive fiscal authority without a concomitant duty to defend the lawsuit does not give rise to an exception to the attorney-client privilege. The recognition of a "necessity" exception to the privilege, as sought here by real parties, would be tantamount to the first

---

[7] The memorandum of decision reflects an assumption on the part of the trial court that Shannon's authority over the corporate affairs is absolute.

[8] The directors also believe the Howard, Rice letter to Shannon describes and evaluates a number of such defenses or cross-claims.

[9] A state of affairs which no doubt contributes to the directors' feelings that Shannon is partisan to the bank.

[10] "The Receiver in this case is in a difficult position, in that he is empowered to defend an action brought by Plaintiff against Defendant and he is obligated by law to act in the best interests of both Plaintiff and Defendant." If indeed the obligation to defend is imposed upon Shannon, the implications of any failure on his part to raise viable defenses or cross-claims against the bank are obvious.

step in the ultimate abolition of the privilege. (Cf. *Mitchell* v. *Superior Court, supra,* 37 Cal.3d at pp. 610-611.)

In the last analysis the trial court is responsible for the management of the corporation during the pendency of the lawsuit, subject to review by this court. Duvel's board is free to petition the court for an order directing the receiver to take whatever actions the board considers to be in the best interests of the corporation. The trial court also possesses the power, upon a proper showing, to modify the order of appointment or to vacate it entirely. To the extent the corporate board requires access to the books and records of the company in order to defend against the lawsuit,[11] the court may craft an appropriate order which will enable them to do so. The receiver is obliged to act in the best interests of all parties involved in the corporation, including the directors and shareholders, and will be exposed to a surcharge action to the extent it can be shown he acted contrary to his responsibilities. In short, the curtailment of the attorney-client privilege is not necessary to promote the best interests of the company or those concerned in its management or property.

A peremptory writ of mandate shall issue commanding the respondent to: (i) vacate the portion of its order which, explicitly or by implication, directs the receiver to divulge or disclose, to the parties or their agents and representatives, any communication between the receiver and the Howard, Rice law firm; and (ii) enter an order denying real parties' motion for such disclosures.

Except as to the communications between Shannon and Howard, Rice, the stay previously entered by this court is vacated.

Franson, P. J., and Best, J., concurred.

---

[11] Corporate shareholders are entitled to access to the company books (Corp. Code, § 1601, subd. (a)).