91 Cal.Rptr.2d 574 (1999)
77 Cal.App.4th 352
ESTATE OF Lorraine JUSTESEN, Deceased.
Martha A. Fenton, as Executor, etc., Petitioner and Appellant,
v.
Shirley Carrell et al., Objectors and Respondents.
No. B126411.
Court of Appeal, Second District, Division Three.
December 30, 1999.
Review Denied April 19, 2000.
*576 Augustine and Seymour and Frederick J. Seymour, Alhambra, for Claimant and Appellant.
Tobi J. Chinski, Los Angeles, for Objectors and Respondents.
*575 KLEIN, P.J.
Martha A. Fenton (Fenton), executor of the estate of Sue E. Sedlak (Sedlak), claimant to a portion of the estate of Lorraine Justesen (Justesen), appeals an order denying her petition to determine entitlement to distribution. (Prob.Code, § 11700.)[1]
Justesen's will left one-half of her estate to Sedlak, subject to the condition that Sedlak was living at the time of distribution. Sedlak died before distribution occurred. The issues presented are whether there was unreasonable delay in administering Justesen's estate, and if so, the remedy for such delay.
The record reflects there was unreasonable delay by both the personal representative and the probate court, so that Sedlak died before distribution of Justesen's estate. Unreasonable delay in administration cannot defeat a beneficiary's interest. Therefore, the order denying Fenton's petition is reversed with directions to grant Fenton's petition determining her entitlement to distribution.

FACTUAL AND PROCEDURAL BACKGROUND
Justesen died testate on April 24, 1996. On July 17, 1996, Justesen's last will dated June 12, 1981, and two codicils, dated June 9, 1982 and July 19, 1984, were admitted to probate. Letters testamentary were issued to the named executor, George Wasson.
Pursuant to the will and codicils, Justesen left one-half of her estate to Sedlak and the other half to George Wasson. The will provided "if ... Sedlak does not survive distribution, then her one-half share shall be distributed to ... George Wasson." The will further stated that "[i]n the event none of the above named persons are living at the time of distribution, then all of my estate shall be distributed to the following persons, equally, share and share alike, or to the then survivors: BETTY JUNE ROBERTS, ... SHIRLEY CARRELL, ... ESTA JEAN MARSHALL, ... DOROTHY VICE, ... and LAVON LIGHTELL[.]"[2]
On August 23, 1996, a few weeks after issuance of letters testamentary, George Wasson died.
On October 11, 1996, Lynne Wasson, the wife of the deceased executor, filed a petition seeking her appointment as administrator with will annexed. On December 17, 1996, LaVon Lightell (Lightell), filed a competing petition for letters of administration with will annexed. On February 5, 1997, the two petitions were heard and Lightell's petition was approved. Lightell was granted authority to administer the estate under the Independent Administration of Estates Act.
*577 On February 18, 1997, Lynne Wasson filed a motion for reconsideration of the order appointing Lighten. On March 13, 1997, Fenton, acting pursuant to a durable power of attorney from Sedlak, filed a declaration in connection with the reconsideration motion. The declaration was served on Lightell and others. In the declaration, Fenton expressed her concern the estate might not be administered in a timely fashion and that prolonged administration jeopardized the interest payable to Sedlak, who was described as "aged and infirm." Fenton also pointed out the conflict posed by Lightell's opportunity to take under the will as one of the contingent beneficiaries in the event Sedlak did not survive distribution.
On March 17, 1997, the trial court heard and denied the motion for reconsideration, leaving the February 5, 1997 order undisturbed.
On May 6, 1997, Lynne Wasson filed a petition to determine entitlement to distribution, seeking a determination she had an interest in the Justesen estate consisting of George Wasson's 50 percent therein. The contingent beneficiaries named in the will then filed statements of interest in opposition to Lynne Wasson's petition.
On July 10, 1997, the date Lynne Wasson's entitlement petition was to be heard, the trial court continued the proceeding on its own motion to October 2, 1997, because it was unable to review the matter. The probate calendar notes indicate "DUE TO LACK OF RESOURCES THIS CASE HAS NOT BEEN REVIEWED AND CALENDAR NOTES HAVE NOT BEEN PREPARED."
On October 2, 1997, Lynne Wasson's petition to determine entitlement and the statements of interest by the contingent beneficiaries came back on for hearing. The trial court again delayed the matter, setting a hearing date for January 12, 1998. Thus, due to the trial court's repeated continuances, the hearing on Lynne Wasson's petition, originally set for July 10, 1997, was delayed for six months to January 12,1998.
On January 12, 1998, the trial court entered an order approving a settlement between Lynne Wasson and the contingent beneficiaries. The settlement related to the 50 percent interest in the estate originally left to George Wasson and did not affect the interest left to Sedlak.
On February 7, 1998, Sedlak died.
On March 12, 1998, Lightell filed an inventory and appraisement, showing assets in the Justesen estate totaling $456,084.85.
On April 15, 1998, Fenton, on behalf of Sedlak's estate, filed a petition to determine entitlement to distribution. (§ 11700.) Fenton alleged unreasonable delays had occurred in the routine administration of the estate and therefore Sedlak's 50 percent share of the estate should be deemed to have vested before her death on February 7, 1998. (Estate of Taylor (1967) 66 Cal.2d 855, 59 Cal.Rptr. 437, 428 P.2d 301.)
The contingent beneficiaries, including Lightell, objected to the petition, asserting there had been no unreasonable delay or dilatory conduct by Lightell. The matter was set for hearing on August 3, 1998.
In support of her position at the hearing, Fenton invoked, inter alia, section 12200, which provides that in an estate in which a federal estate tax return is not required, the personal representative shall petition for an order of final distribution or present a status report on administration within one year after issuance of letters. Fenton also cited Lightell's delay in filing the inventory and appraisement.
The trial court was unpersuaded by Fenton's showing, stating: "Petition denied, the court finding that settlement of the estate was not so unreasonably delayed, so as to invoke the remedy of the Taylor case.[[3]] Neither the delay in preparation of the file for court consideration *578 on the Wasson `Petition for Determination' (from July 10, 1997 to October 2, 1997, or eighty-four [84] days), nor the delay in calendaring for trial (from October 2, 1997 to January 12, 1998, or one-hundred-two [102] days) should be allowed to augment the passage of time to find settlement sufficiently delayed to avoid the plain language of the will requiring Sue Sedlak to survive court ordered distribution."
Fenton filed a timely notice of appeal from the order denying her petition to determine entitlement to distribution.[4]

CONTENTIONS
Fenton contends the trial court erred in finding the distribution of the estate was not unreasonably delayed.

DISCUSSION

1. When there is unreasonable delay in distributing an estate, a contingent interest vests at the time distribution should have been made.

In Estate of Taylor, supra, 66 Cal.2d 855, 59 Cal.Rptr. 437, 428 P.2d 301, "Eva Barclay Taylor died testate September 14, 1963. Her will provided that one-third of the residue of her estate should go to Ellen Catherine Glasky if she survived distribution of the estate. If she predeceased distribution, her one-third share was to go in equal shares to Harold James Duerden and William Henry Duerden, Jr. [Fn. omitted.] The will was admitted to probate on November 26, 1963, and letters testamentary were issued to Harold, the executor of the estate, on December 2, 1963. The petition for final distribution was filed March 4, 1965, requesting that one-third of the residue of the estate be distributed to Ellen. Hearing on the petition was set for March 29, 1965. Ellen died March 15, 1965. Harold then filed another petition for final distribution requesting that the one-third share bequeathed to Ellen be distributed to him and William. Objections to the petition were filed by Genevieve C. Cooney, administratrix with the will annexed of Ellen's estate and a legatee under Ellen's will, and by Rosemary Lick, also a legatee under Ellen's will. The [lower] court sustained the objections to the petition for final distribution and decreed that Ellen's interest vested in her before her death. The [lower] court found that the estate could have been distributed in September of 1964 and should have been distributed before the death of Ellen in March of 1965. It ordered distribution of Ellen's share to Miss Cooney as administratrix of Ellen's estate." (Id., at pp. 856-857, 59 Cal.Rptr. 437, 428 P.2d 301.)
The Supreme Court affirmed. It found "[t]he trial court was ... justified in concluding that the overall delay was unreasonable and in finding that the estate should have been distributed before Ellen's death. [¶] Based on this finding, the court applied the rule that vesting cannot be postponed by unreasonable delay in preparing an estate for distribution and that when there is such delay contingent interests vest at the time distribution should have been made. [Citation.]" (Estate of Taylor, supra, 66 Cal.2d at p. 858, 59 Cal.Rptr. 437, 428 P.2d 301; accord Estate of Germond (1971) 4 Cal.3d 573, 577, 94 Cal.Rptr. 153, 483 P.2d 769.)
The Duerdens contended this rule was "inconsistent with Probate Code [former] section 142. That section provides: `A condition precedent in a will is one which is required to be fulfilled before a particular disposition takes effect. It is to be deemed performed when the testator's intention has been substantially, though not literally, complied with. Nothing vests until such condition is fulfilled, except where fulfillment is impossible....' [The Supreme Court explained:] The crucial issue under this section is whether a clause requiring survivorship should be interpreted to mean survivorship to distribution or survivorship to the time distribution should have occurred, or, as an alternative, *579 whether survivorship to the earlier date constitutes substantial compliance with the condition. Under either interpretation we believe that unreasonable delay cannot defeat the beneficiary's interest. This conclusion promotes the established policy favoring prompt distribution of estates [citations] and carries out the presumed intent of the testatrix. In the absence of any indication to the contrary a testator contemplates prompt distribution. [Her] intention is substantially complied with if a beneficiary who is alive at the time distribution could and should have occurred is allowed to take under the will. [Fn. omitted.]" (Estate of Taylor, supra, 66 Cal.2d at p. 858, 59 Cal.Rptr. 437, 428 P.2d 301, italics added.)
The Supreme Court also rejected the Duerdens's contention "that since Ellen could have petitioned for a preliminary distribution during her life, delay in settling the estate cannot vest title in her." (Estate of Taylor, supra, 66 Cal.2d at p. 859, 59 Cal.Rptr. 437, 428 P.2d 301.) It held "Ellen was under no obligation to petition for preliminary distribution, and there is `no principle which would create a forfeiture because of failure to take such legal action.' [Citation.]" (Ibid.)

2. Time frame for distribution.

As a preliminary matter, a personal representative is an officer of the court and occupies a fiduciary relationship toward all parties having an interest in the estate. (§ 58; Larrabee v. Tracy (1943) 21 Cal.2d 645, 650, 134 P.2d 265; 12 Witkin, Summary of Cal. Law (9th ed. 1990) Wills and Probate, § 438(b), p. 460.) This standard governs the personal representative's obligation to comply with the time periods specified in the statutory scheme.

a One year within which to petition for an order for final distribution.

With respect to the time for closing an estate, section 12200 provides: "The personal representative shall either petition for an order for final distribution of the estate or make a report of status of administration not later than the following times: [¶] (a) In an estate for which a federal estate tax return is not required, within one year after the date of issuance of letters. [¶] (b) In an estate for which a federal estate tax return is required, within 18 months after the date of issuance of letters." (Italics added.)
Here, a federal estate tax return was not required and therefore the one-year period applies.
Because there were two personal representatives in this matter, the question arises as to whether the initial issuance of letters to George Wasson on August 2, 1996, or the subsequent issuance of letters to Lightell on February 5, 1997, commenced the one-year period for closing an estate. (§ 12200, subd. (a).) In view of "the established policy favoring prompt distribution of estates" (Estate of Taylor, supra, 66 Cal.2d at p. 858, 59 Cal.Rptr. 437, 428 P.2d 301), it is appropriate that the initial issuance of letters commence the one-year period. Delays attributable to a personal representative's inability to serve should not be borne by the beneficiaries awaiting distribution.
Here, the applicable one-year period to petition for an order for final distribution expired on August 2, 1997, more than six months before Sedlak's death.

b. The requirement of filing an inventory and appraisal within four months.

In addition to the one-year period under section 12200, the personal representative must also comply with certain other time requirements.
The duties of a personal representative include the filing of an inventory and appraisal with the court clerk. (§ 8800, subd. (a).) The inventory and appraisal "shall be filed within four months after letters are first issued to a general personal representative. The court may allow such further time for filing an inventory and appraisal *580 as is reasonable under the circumstances of the particular case." (§ 8800, subd. (b), italics added.)
The personal representative is duly advised of this obligation at the outset. Section 8404 states: "(a) Before letters are issued, the personal representative (other than a trust company or a public administrator) shall file an acknowledgment of receipt of a statement of duties and liabilities of the office of personal representative. The statement shall be in the form prescribed by the Judicial Council."
In accordance with section 8404, the Judicial Council has adopted Form DE-147, captioned "Duties and Liabilities of Personal Representative." This form instructs the personal representative, in pertinent part: "When you have been appointed by the court as personal representative of an estate, you become an officer of the court and assume certain duties and obligations. An attorney is best qualified to advise you about these matters. You should clearly understand the following: [¶] ... [¶] 2. INVENTORY OF ESTATE PROPERTY [¶] ... [¶] c. File an inventory and appraisal [¶] Within four months after your appointment as personal representative, you must file with the court an inventory and appraisal of all the assets in the estate." (Italics added.)

3. Where the statutory time period is exceeded, the personal representative has the burden to establish additional time was reasonably required.

Section 12200, subdivision (a), provides the personal representative "shall" petition for an order for final distribution within one year after the date of issuance of letters. Similarly, section 8800, subdivision (b), provides the inventory and appraisal "shall" be filed within four months of issuance of letters. The word "shall" ordinarily is construed as mandatory or directory, as opposed to permissive. (Common Cause v. Board of Supervisors (1989) 49 Cal.3d 432, 443, 261 Cal.Rptr. 574, 777 P.2d 610; California Correctional Peace Officers Assn. v. State Personnel Bd. (1995) 10 Cal.4th 1133, 1144-1145, 43 Cal.Rptr.2d 693, 899 P.2d 79.)
The code requires the personal representative to show good cause for extending the four-month period. Section 8800, subdivision (b) states "[t]he court may allow such further time for filing an inventory and appraisal as is reasonable under the circumstances of the particular case." Further, the very point of Taylor is "that unreasonable delay cannot defeat the beneficiary's interest." (Estate of Taylor, supra, 66 Cal.2d at p. 858, 59 Cal.Rptr. 437, 428 P.2d 301.)
Based thereon, we conclude that when the moving party claiming entitlement to distribution based on unreasonable delay makes a showing the personal representative has exceeded the statutory time period, the burden shifts to the personal representative to establish that additional time is reasonable under the circumstances.

4. There was unreasonable delay by Lightell in taking 13 months to comply with the inventory and appraisal requirement.

Respondents concede "the Administrator did not file the Inventory and Appraisal of the estate assets by June 5, 1997, within four months after Letters of Administration were issued to her on February 5, 1997." Under the code, the inventory and appraisal "shall be filed within four months after letters are first issued...." (§ 8800, subd. (b), italics added.) However, even assuming it was the issuance of the second set of letters to Lightell, rather than the letters issued to George Wasson, which commenced the four-month period to file the inventory and appraisement, the four-month period was grossly exceeded. The record reflects Lightell took more than 13 months, until March 12, 1998, to file the inventory and appraisement. Sedlak, who died on February *581 7, 1998, did not survive the compiling of the inventory.
Although Lightell acknowledges her delay in filing the inventory and appraisal, she asserts she acted reasonably because the circumstances were such that the inventory and appraisal could not be filed within four months. Lightell emphasizes the law does not require the administrator to proceed "`as quickly as possible,'" only to proceed without unreasonable delay. (Estate of Germond, supra, 4 Cal.3d at p. 580, 94 Cal.Rptr. 153, 483 P.2d 769.) Be that as it may, Lightell has not shown she required triple the ordinary time allowed by statute to file the inventory and appraisal.
The final inventory and appraisal, valuing the estate at $456,084.85, listed the following assets: checking and savings accounts; certificates of deposit; proceeds of an insurance policy; a single family residence valued at $117,000; shares of common stock; United States savings bonds; a 1971 automobile; and miscellaneous silver coins.
The record reflects the delay in completing the inventory and appraisal apparently was due to Lightell's efforts to locate certain items of personal property, specifically, a Danish Christmas plate collection, a Hummell collection, a railroad watch, wedding ring sets, a pearl necklace, an antique doorstop and a stamp collection. As late as December 1997, this quest was ongoing. However, none of these items was included in the final inventory.
The record further reflects a somewhat leisurely pace by Lightell in tending to this matter. On March 3, 1997, MacCarley & Rosen, counsel for Lynne Wasson, sent Lightell's attorney two folders of documents, including a summary of assets, that had been prepared by George Wasson before his death.[5] Lightell's counsel, Carol Churchill, did not respond to that letter until July 17, 1997, at which time Churchill requested additional records. On September 8, 1997, MacCarley & Rosen furnished the additional requested information and records. Lightell's counsel did not respond until December 8, 1997, at which time she inquired into the antique door stop and other omitted items mentioned above.
Although Lightell contends her conduct in inventorying the estate was reasonable, she failed to show it was "reasonable under the circumstances of [this] particular case" (§ 8800, subd. (b)), to take more than three times longer than the ordinary four-month period to file the inventory and appraisal. On this record, the delay was excessive. Given Lightell's awareness of Sedlak's failing health, Lightell's fiduciary duty to Sedlak, and Lightell's status as a contingent beneficiary, it was unreasonable for Lightell to go much beyond the four-month period simply to locate a few items of personal property and thereby create a more perfect inventory.

No merit to respondents' contention the delay in filing the inventory and appraisal was nonprejudicial.
Respondents assert that even assuming the inventory and appraisal had been timely filed, the estate could not have been closed until some time after January 12, 1998, because that was the date Lynne Wasson's entitlement petition was settled and all the beneficiaries of the Justesen estate had been identified. Therefore, a petition for final distribution could not even be filed prior to January 12, 1998, and would not be heard for four or five weeks, until some time after Sedlak's death on February 7, 1998.
This argument requires an examination of the judicial delay in entertaining Lynne Wasson's entitlement petition, and the legal effect of that delay. That discussion follows. As explained below, Lightell's delay, *582 compounded by the trial court's delay, was prejudicial to Sedlak's interest and implicates the Taylor remedy.

5. Unreasonable judicial delay in hearing Lynne Wasson's entitlement petition.

We review the pertinent chronology.
On May 6, 1997, Lynne Wasson filed a petition to determine entitlement to distribution, seeking a determination she had an interest in the Justesen estate consisting of George Wasson's 50 percent share therein. The matter was to be heard on July 10, 1997.
However, the matter was not heard on the scheduled date, even though Fenton already had advised the trial court and Lightell of Sedlak's failing health. On July 10, 1997, the trial court ordered a continuance because it was unable to proceed at that time. The probate calendar notes indicate "DUE TO LACK OF RESOURCES THIS CASE HAS NOT BEEN REVIEWED AND CALENDAR NOTES HAVE NOT BEEN PREPARED." The trial court continued the matter for nearly three months, to October 2, 1997.
On October 2, 1997, Lynne Wasson's petition to determine entitlement again came on for hearing. At that juncture, a hearing date was set for more than three months later, on January 12, 1998.
On January 12, 1998, the date set for hearing, an order was entered approving a settlement in the dispute between Lynne Wasson and the contingent beneficiaries. As noted, the settlement related to the 50 percent interest in the estate originally left to George Wasson and did not affect the interest originally left to Sedlak.
In sum, instead of entertaining Wasson's petition to determine entitlement in a timely manner, the trial court on its own motion continued the matter for nearly three months. Then, when the matter came on for hearing, the trial court again delayed the matter for another three months.
Had the trial court proceeded on July 10, 1997, or within a reasonable time thereafter, the estate would have been in a position to close within Sedlak's lifetime. Through no fault of the parties, a hearing on Lynne Wasson's petition was delayed until January 12, 1998, at which time that dispute was settled. The delay raises the question as to the proper remedy for the judicial inaction herein.

6. Trial court erred in ruling the judicial delay in hearing Lynne Wasson's entitlement petition was immaterial; the Taylor remedy applies regardless of whether unreasonable delay is attributable to the personal representative, to the trial court, or to both.

Here, but for unreasonable delay on the part of both Lightell and the trial court, distribution would have occurred prior to Sedlak's death. Had Lightell filed the inventory and appraisal within four months of the issuance of letters of administration to her on February 5, 1997, or within a reasonable time thereafter, and had the trial court heard and determined Lynne Wasson's entitlement petition on July 10, 1997, or within a reasonable time thereafter, distribution would have occurred before Sedlak's death on February 7, 1998. There were no other impediments to closing the estate. There were no creditor's claims, will contests, or other matters to preclude distribution prior to Sedlak's death. Therefore, the unreasonable delay by both Lightell and the trial court was prejudicial to Sedlak's interest and the Taylor remedy applies.
As indicated, the trial court denied Fenton's petition on the ground "that settlement of the estate was not so unreasonably delayed, so as to invoke the remedy of the Taylor case. Neither the delay in preparation of the file for court consideration on the Wasson `Petition For Determination' (from July 10, 1997 to October 2, *583 1997, or eighty-four [84] days), nor the delay in calendaring for trial (from October 2, 1997 to January 12, 1998, or one-hundred-two [102] days) should be allowed to augment the passage of time to find settlement sufficiently delayed to avoid the plain language of the will requiring Sue Sedlak to survive court ordered distribution."
Respondents agree with the trial court's analysis. They contend the trial court's six-month delay in calendaring Lynne Wasson's petition should not be taken into consideration in determining whether there was unreasonable delay in preparing the estate for distribution.
We conclude the trial court gave Taylor an overly restrictive interpretation. The lesson of Taylor is that unreasonable delay in distributing an estate cannot defeat the beneficiary's interest. (Estate of Taylor, supra, 66 Cal.2d at p. 858, 59 Cal.Rptr. 437, 428 P.2d 301.) Where there has been unreasonable delay, contingent interests vest at the time distribution should have occurred. (Ibid.) The purpose of this rule is to advance the established policy favoring prompt distribution of estates, and to carry out the presumed intent of the testator, who contemplated prompt distribution. (Ibid.)
The purpose of the Taylor remedy is not to punish the executor, but rather to effectuate the intent of the testator. This is demonstrated by Taylor's rejection of the Duerdens's contention "even if the executor, Harold, should not take because of the delay, William should take one-half of Ellen's bequest." (Estate of Taylor, supra, 66 Cal.2d at p. 859, 59 Cal.Rptr. 437, 428 P.2d 301.) Taylor explained: "This contention is based on the erroneous assumption that the rule vesting Ellen's interest is designed solely to prevent an executor from profiting by his own wrong. Ellen's conditional bequest vested at a time before her death, not because of the executor's wrong, but because that was the time when distribution should have occurred." (Ibid.)
Consequently, it matters little whether the unreasonable delay in distribution is attributable to the personal representative, to the trial court, or to both. Taylor prevents unreasonable delay in administration from giving rise to the forfeiture of the interests of a contingent beneficiary, irrespective of whether the delay is due to dilatory administration by the executor or a lack of judicial resources in the probate court.
Further, there is no reason in logic or law why a contingent beneficiary such as Sedlak should suffer the consequences of an underfunded court system, or why inadequate judicial resources should serve to defeat a testator's intent. Such an outcome would amount to a miscarriage of justice. Claimants who are compelled to resort to the probate court have every right to expect there will be sufficient judicial resources available to process matters in a timely fashion. In the event the system fails in that regard, the Taylor remedy stands as an essential safeguard to protect the hapless claimant from forfeiture.

7. No merit to respondents' reliance on plain language of will.

Finally, we dispose of respondents' contention the plain language of Justesen's will required Sedlak to survive distribution in order to take under the will.
Respondents rely on section 11801, subdivision (b), which states in pertinent part: "... distribution may not be made under this chapter if the decedent's will provides that the beneficiary is entitled to take under the will only if the beneficiary survives the date of distribution or other period stated in the will and the beneficiary fails to survive the date of distribution or other period." (Stats.1990, ch. 79, § 14.)
The Law Revision Commission Comment pertaining to this enactment states in relevant part: "Section 11801 continues *584 Section 11801 of the repealed Probate Code without change.... A provision in a will requiring survival to the date of distribution is satisfied by survival to the date distribution could and should have occurred. Estate of Taylor, 66 Cal.2d 855, 428 P.2d 301, 59 Cal.Rptr. 437 (1967)." (54 West's Ann. Prob.Code, Law Rev. Com. com. foll. § 11801, p. 301.)
Thus, Taylor remains good law, notwithstanding the 1990 enactment.

DISPOSITION
The order denying Fenton's petition is reversed with directions to enter an order determining that Sedlak's interest in Justesen's estate vested prior to Sedlak's death, and directing distribution of Sedlak's interest to Fenton as executor of Sedlak's estate.
Fenton to recover costs on appeal.
CROSKEY, J., and SCHNEIDER, J.[*], concur.
NOTES
[1] All further statutory references are to the Probate Code, unless otherwise indicated.
[2] We refer to these five individuals as contingent beneficiaries or respondents.
[3] Estate of Taylor, supra, 66 Cal.2d 855, 59 Cal.Rptr. 437, 428 P.2d 301.
[4] The order is appealable. (§ 1303, subd. (g).)
[5] George Wasson initially estimated the estate assets at $456,270.44, which was virtually identical to Lightell's March 1998 valuation of $456,084.85. Thus, the inventory and appraisal was substantially complete at the time Lightell was appointed.
[*] Assigned by the Chairperson of the Judicial Council.