Filed 11/8/13  San Pasqual Fiduciary Trust Co. v. Holt CA4/3

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SAN PASQUAL FIDUCIARY TRUST COMPANY, as Trustee, etc., | G046003 |
| Plaintiff and Respondent, | (Super. Ct. No. 239915) |
| v. | O P I N I O N |
| CLUNIES A. HOLT et al., | |
| Defendants and Appellants, | |
| DAVID M. DENHOLM, | |
| Defendant and Respondent. | |

Appeal from an order of the Superior Court of Orange County, Mary Fingal Schulte, Judge.  Affirmed.

Law Offices of William B. Hanley and William B. Hanley for Defendants and Appellants.

Poindexter & Doutré and Jeffrey A. Kent for Plaintiff and Respondent.

Hinojosa & Wallet, Jeffrey Forer and Shannon H. Burns for Defendant Respondent.

* * *

This court has before it several appeals arising from a long drawn out dispute among the beneficiaries of a family trust formed in 1973. This appeal concerns a challenge to the probate court's order granting the interim trustee's petition for instructions about leasing real property of the trust and directing the payment of net income to one of the beneficiaries. Two of the beneficiaries who are mother and daughter, Clunies A. Holt and Clunies E. Holt (hereafter collectively referred to as the Holts unless the context requires otherwise), argue the trustee lacked standing to bring the petition and they are entitled to additional income. We affirm the probate court's order.

I

A. *Background Facts*

The following summary of the underlying facts is taken in large part from the probate court's August 2011 detailed statement of decision. The case concerns the David Scott Denholm and Clunies Manson Denholm Trust dated April 2, 1973 (the Trust). David Denholm died in 1984 and Clunies Denholm died in 2005. The Trust is irrevocable.

The beneficiaries of the Trust are:

1.      David M. Denholm (Denholm), who is the son of the trustors. The Trust provided Denholm was a 50 percent income beneficiary until the fifth anniversary of the death of the last trustor to die, which was October 7, 2010. After that date, Denholm was entitled to receive a distribution of one-half of the Trust's estate. Denholm did not receive this distribution in 2010 for reasons that will be discussed anon.

2

2.      Clunies A. Holt, who is the daughter of the trustors. The Trust provided she was a 50 percent income beneficiary until October 7, 2010. After that date, she was to be the sole income beneficiary of the Trust.

3.      Clunies A. Holt's three children, Clunies E. Holt, James Holt, Jr., and Cameron Holt Schmidt, were entitled to the distribution of the remaining one-half of the Trust upon their mother's death. Clunies A. Holt and her children will sometimes be collectively referred to in this opinion as the "Holt Beneficiaries."

Denholm was the trustee of the Trust from its inception until December 2007. On December 19, 2007, the court accepted Denholm's voluntary resignation, and appointed San Pasqual Fiduciary Trust Company (San Pasqual) as the interim trustee.

The catalyst for Denholm's resignation was a civil lawsuit filed by the Holts against Denholm, individually, and as trustee of the Trust for breach of fiduciary duty and other torts. This civil action was tried in 2010 before trial judge David C. Velasquez. On September 22, 2010, the court issued a minute order awarding the Holts, on behalf of the Trust, over $5.3 million. On May 6, 2011, the court filed a judgment awarding $5,416,315.77 on behalf of the Trust. The judgment was later corrected nunc pro tunc to account for prejudgment interest, increasing the award to $5,751,682.17. Because of this ruling, San Pasqual postponed distribution of Denholm's interest in half of the Trust on October 7, 2010, as required by the terms of the Trust.

The Trust owned other substantial assets. Relevant to this appeal, it owned commercial real property on Sawtelle Boulevard in Los Angeles, California (hereafter the Sawtelle Properties). The Sawtelle properties consisted of three parcels of land, each containing buildings: (1) 2322 Sawtelle; (2) 2326-2330 Sawtelle; and (3) 2340-2344 Sawtelle. In 2011, some of the buildings were leased and some were not. Up through February 28, 2011, the Trust earned a positive net income, but this changed to a negative when the leases on 2326 and 2340 Sawtelle expired.

3

From November 1, 2010, to February 28, 2011, San Pasqual distributed $10,000 to Holt each month. However, as of March 1, 2011, there was no net income to distribute, and San Pasqual had no authority under the Trust to invade the principal.

## B. *The Petition Challenged on Appeal*

In January 2011, San Pasqual filed a petition for instructions concerning (1) leasing the Sawtelle Properties, and (2) income distributions to Clunies A. Holt. The trial on this petition lasted a little over one day, during which the court considered testimony from witnesses, exhibits, and oral argument.

The court rejected the Holts' objection to the petition on the grounds San Pasqual lacked standing to bring the petition. It instructed San Pasqual to retain a qualified real estate broker to represent the Trust and lease the 2326/2340 Sawtelle Properties, to assess the environmental condition of the property, and to expend the Trust's funds to place the property into whatever may be reasonably required by a qualified lessee. In addition, the court instructed San Pasqual that Clunies A. Holt should receive 50 percent, not 100 percent of the net income from the Trust. On appeal, the Holts only challenge the ruling regarding San Pasqual's standing and the amount of net income owed to Clunies A. Holt.

## II

### A. *Standing*

In its statement of decision, the probate court summarized the Holts' argument as follows: The Holts argue, alternatively, that (1) San Pasqual resigned as trustee and all the beneficiaries (a group that the Holts contend does not include Denholm) have accepted that resignation; (2) all beneficiaries (again except for Denholm) have agreed to a successor trustee. The probate court determined these arguments were not supported by the evidence, and to the contrary, the evidence supported the conclusion the parties never reached an agreement about San Pasqual's resignation. Moreover, the probate court determined the requirements under Probate

4

Code section 15640[1] for the resignation of a trustee had not been met. And finally, the court concluded the prior order appointing San Pasqual provided it would act as interim trustee until its resignation and appointment of a successor trustee or upon further court order. Because neither of these events had occurred, the probate court concluded San Pasqual had standing as interim trustee to seek instructions from the probate court about administration of the Trust.

On appeal, the Holts essentially assert the same two contentions. The parties agree our standard of review is de novo regarding interpretation of the Trust. (*Burch v. George* (1994) 7 Cal.4th 246, 254.) And the issue of whether the interim trustee resigned is reviewed under the substantial evidence test. (*Wilson v. County of Orange* (2009) 169 Cal.App.4th 1185, 1188.)

It is undisputed the original trustee, Denholm, resigned on December 5, 2007. The Holts assert Article XI of the Trust clearly declares, "In the event of the death or incapacity" of Denholm to act as trustee "the following persons shall act as [a]lternate [c]o-[t]rustees in the order set forth, providing that after such death or incapacity there shall always be two [c]o-[t]rustees so acting . . . ." The alternate trustee list includes nine people, and James A. Holt, Jr., is the last name on the list.

The Holts assert that because the Trust identifies the people who must fill a vacancy, Denholm must be replaced as provided in the Trust. The Holts assert James A. Holt, Jr., is the only eligible person named as alternate trustee. The Holts characterize San Pasqual as simply the temporary trustee who can be replaced by a different interim trustee. The Holts boldly conclude San Pasqual's resignation was not necessary for the beneficiaries to fill the vacancy.

This overly simplistic argument ignores several key facts. First, Denholm's vacancy was not compelled by his death or incapacity. When pursing their civil action

---

[1] All further statutory references are to the Probate Code, unless otherwise indicated.

5

against Denholm, the Holts filed a petition to remove Denholm as trustee and suspend his powers pending a hearing and appointment of a successor trustee. At the hearing, Denholm orally tendered his resignation as trustee pursuant to section 17200, subdivision (b)(11). On December 19, 2007, the court accepted Denholm's resignation and appointed San Pasqual as the interim trustee effective December 5, 2007. The court's order noted San Pasqual consented to the appointment under certain terms and conditions. Relevant to this case, San Pasqual agreed to "act as interim [t]rustee of the [Trust] until the earlier of (a) the resignation of San Pasqual and the appointment of a successor [t]rustee or (b) upon further [c]ourt order."

Thus, the probate court filled the vacancy created by the resignation. The Holts expressly stipulated to the court's order. They provide no case authority or rational reason why the court order should be ignored. The Trust certainly did not confer the Holts with authority to unilaterally appoint a new successor trustee in violation of the court's order appointing San Pasqual as the interim trustee, and before San Pasqual officially resigned as trustee.

Alternatively, the Holts argue they have the authority to appoint a successor trustee because San Pasqual effectively resigned in December 2010. We find substantial evidence supports the probate court's conclusion San Pasqual never resigned as interim trustee.

On appeal, the Holts maintain San Pasqual sent them a letter on December 6, 2010, stating it would prepare a final accounting and resign as trustee. In a footnote, the Holts claim they informed San Pasqual of their intention to replace it as trustee on November 17, 2010, and again on December 3, 2010. The Holts contend they accepted San Pasqual's resignation on December 15, 2010. They assert San Pasqual resigned on December 6, 2010, and then improperly attempted to revoke that intention on December 22, 2010, when it learned the Holts were seeking to fill the vacancy of successor trustee by an ex parte application on December 23, 2010.

6

We have reviewed the record, and like the probate court, we conclude the undisputed record tells a much different story. In early November 2010, San Pasqual wrote a letter to Clunies A. Holt discussing the status of lease negotiations, and it requested input as to "what kind of tenant or use" all the Trust's beneficiaries would find acceptable with respect to the Sawtelle Properties. In response, on November 17, the four Holt Beneficiaries demanded San Pasqual's immediate resignation. The letter was not signed by Denholm. The Holt Beneficiaries sent a second letter on December 3 requesting San Pasqual's resignation. That letter declared the Holt Beneficiaries were the only beneficiaries of the Trust, and they commanded that San Pasqual "cease all activities on behalf of the Trust."

On December 6, San Pasqual sent a letter informing the Holt Beneficiaries that Denholm remained a beneficiary of the Trust "notwithstanding the uncertainty as to the interest [he will] receive from [the Trust]." In addition, San Pasqual stated it would be willing "and now will, prepare a final accounting through December 31, 2010[,] and will petition the court seeking approval of that accounting (as well as the pending first account current) and a court order accepting [San Pasqual's] resignation as trustee, which resignation will likely be conditioned upon some other person or entity being appointed trustee in place of [San Pasqual]."

In the December 6 letter, San Pasqual told the Holt Beneficiaries, "pending receipt of a court order approving [its] resignation as trustee and approving its accountings, [San Pasqual] will continue to administer the [Trust] in a prudent and professional fashion, acquiescing to the requests of all beneficiaries to the extent that [San Pasqual] can do so consistent with [its] obligations as trustee."

To summarize, the December 6 letter served to notify the Holt Beneficiaries of San Pasqual's future *intent* to resign, conditioned on several key events. Namely, San Pasqual stated it would tender a resignation *after* it completed its accounting at the end of the year and *after* it received approval from the court. San Pasqual notified the

7

Holt Beneficiaries its resignation would likely be conditioned on the court's approval of its replacement trustee (as expressly stated in the court's order appointing San Pasqual the interim trustee).

On appeal, the Holts contend they "accepted" the resignation on December 15, 2010. The record belies this contention. We found absolutely no evidentiary support for the Holts' claim they accepted the terms of San Pasqual's proposed resignation. To the contrary, the Holts sent San Pasqual a letter that disputed whether Denholm was still a beneficiary of the Trust, and stated, "We reiterate our choice is to replace you with a successor trustee(s). We accept your resignation as stated in the December 6 . . . letter, *with the exception* (1) it is effective immediately, not as of December 31, 2010, [and] (2) the objection to the San Pasqual accounting remain. [¶] Attached, please find the [r]esignation for your signature." (Italics added.)

The Holts offer no explanation or reasoned analysis to support their claim the above letter was an acceptance of San Pasqual's terms of resignation. By its plain language, the letter rejected the terms outlined by San Pasqual for its resignation, and demanded an immediate resignation. There is no legal or rational basis to conclude the December 15 letter represents an agreement, or meeting of the minds, between the parties about how San Pasqual would resign as interim trustee.

The following week, after the Holts' counsel filed an ex parte application seeking the appointment of a new trustee, San Pasqual sent him a letter stating it had not resigned as interim trustee and "will not presently resign as interim trustee." The letter added, "Further so that there can be no misunderstanding as to the San Pasqual's position" it had prepared a pleading entitled "[n]on-[r]esignation of San Pasqual," which was served on all parties and the court. San Pasqual asked the Holts' counsel not to proceed with his inappropriate ex parte application. Based on the above record, we find there is substantial evidence supporting the probate court's ruling San Pasqual did not agree to resign in 2010.

8

Even if we were to assume for the sake of argument there was some sort of resignation agreement between the four Holt Beneficiaries and San Pasqual, the probate court would have been required to deem it invalid under the terms of section 15640. It is well settled that, "After acceptance, the trustee cannot resign except as the trust instrument provides, or with the permission of the court or the consent of the beneficiaries. [Citations.]" (13 Witkin, Summary of Cal. Law (10th ed. 2005) Trusts, § 50, p. 621; § 15640.)

Specifically, section 15640 mandates: "A trustee who has accepted the trust may resign *only* by one of the following [four] methods . . . ." (Italics added.) We conclude that only two of the four methods of resignation apply in this case. Section 15640 subdivisions (a) and (b), do not apply unless a trust specifies how the trustee may resign or if the trust is revocable. Neither situation applies in this case. Section 15640, subdivision (c), provides that if a trust is not revocable, the trustee may resign "with the consent of *all adult beneficiaries* who are receiving or are entitled to receive income under the trust or to receive a distribution of principal if the trust were terminated at the time consent is sought. . . ." (Italics added.)

Here, there is no evidence in the record of unanimous consent by all the beneficiaries. Only the four Holt Beneficiaries insisted San Pasqual resign as trustee. Denham did not, and there is no evidence in the record before us that he was no longer a beneficiary of the Trust. At the time the probate court made its ruling in August 2011, there still had not been a final judgment entered in the civil action against Denholm. The court correctly noted that because the judgment was not final and could be appealed, and because it had not been decided how much of the Trust's estate Denholm was entitled to, Denholm retained a beneficial interest in the undistributed one-half of the Trust and in the net income earned on the undistributed portion of the Trust's estate. We agree with the probate court's conclusion Denholm is one of the Trust's beneficiaries and he never

9

consented to San Pasqual's resignation. Consequently, section 15640, subdivision (c) does not apply.

Finally, section 15640, subdivision (d), provides a trustee may resign "[p]ursuant to a court order obtained on petition by the trustee under section 17200. The court shall accept the trustee's resignation and may make any orders necessary for the preservation of the trust property, including the appointment of a receiver or a temporary trustee." The record shows San Pasqual informed the beneficiaries of its intention to file a petition under section 17200 *after* it completed its accounting and *after* the court approved the accounting. When the Holt Beneficiaries rejected this plan, San Pasqual never filed a petition seeking resignation from the court. Accordingly, the court never ordered San Pasqual's resignation and section 15640, subdivision (d), is inapplicable.

We conclude San Pasqual, as the interim trustee, had standing to bring the petition requesting instructions for administration of the Trust. We note the Holts do not challenge on appeal the court's determination the Sawtelle Properties should be leased or the instructions the court gave San Pasqual about how to proceed regarding leasing. Enough said on this issue.

B. *Income Distribution*

The Holts maintain the court erred because Clunies A. Holt was only entitled to income from one-half of the Trust. They assert she is the sole income beneficiary of the Trust, entitled to income from the entire Trust's estate (including Denholm's undistributed one-half share). In short, they are wrong.

The parties agree the issue of how much income from the Trust should be distributed to the income beneficiary is a question of trust interpretation subject to a de novo standard of review. The Trust plainly states the Trust's income was to be divided between Clunies A. Holt and Denholm, but on the fifth anniversary of the death of the last trustor, the Trust "shall terminate as to an undivided one-half (1/2) of the . . . estate and this, together with the one-half of any undistributed income, shall be

10

distributed to [Denholm]." Thereafter, Clunies A. Holt had an interest in receiving income from "the remaining one-half (1/2) of the . . . estate" for the rest of her life.

The Holts contend that on October 7, 2010, San Pasqual could have distributed one-half of the estate to Denholm as described in the Trust. They recognize this distribution was not made because at the time it appeared Denholm had lost the civil action and would owe the Trust substantial damages. Because the judgment was not final, San Pasqual determined it would be prudent to wait before making the distribution.

Although it is undisputed Denholm's distribution was simply postponed, the Holts argue that under its express terms, the Trust in fact "terminated" as to Denholm on October 7, 2010, and continued solely for Clunies A. Holt's benefit and the benefit of her children. The Holts argue Denholm's beneficial interest in the Trust expired because under section 15407, subdivision (a), "A trust terminates when any of the following occurs: [¶] (1) the term of the trust expires." The Holts explain the Trust clearly stated that after October 7, 2010, the new income of the Trust must be paid to Clunies A. Holt "as long as she shall live." The Holts argue the Trust expressly states Clunies A. Holt is currently the sole income beneficiary of the Trust.

This argument borders on the ridiculous. We dare say that if San Pasqual had liquidated assets and distributed one-half of the estate to Denholm on October 7, 2010, despite the looming $5 million judgment, the Holts would be suing San Pasqual and petitioning to halt the distribution. In any event, the Holts' argument that Clunies A. Holt is now entitled to the income on Denholm's undistributed share fails for several obvious reasons.

First, the Holts fail to supply any case authority or legal rationale as to why Denholm is no longer entitled to income from *his* vested share simply because it has not yet been distributed. Nor do they provide authority to support the notion a beneficiary's vested interest can expire due to the actions of the trustee. We conclude neither legal

11

authority nor equity supports the notion Denholm's vested right to his share of the estate was forfeited because *the trustee* postponed distribution. An appellant's failure to support his or her contentions with meaningful legal analysis violates California Rules of Court, rule 8.883(a)(1)(A), and waives the issue on appeal. (See *Badie v. Bank of America* (1998) 67 Cal.App.4th 779, 784-785.)

The Holts' reliance on section 15407, subdivision (a), to support their argument is misplaced. Section 15407 provides a trust terminates when "the term . . . expires" and also when the trust is revoked or "[t]he trust purpose is fulfilled . . . [¶] . . . becomes unlawful . . . [¶] . . . [or] becomes impossible to fulfill." Section 15407, subdivision (b), further explains, "On termination of the trust, the trustee continues to have the powers reasonably necessary under the circumstances to wind up the affairs of the trust." In other words, section 15407 provides that after "termination" of a trust the trustee retains the power to distribute assets to those with a vested interest. The statute does not say termination of a trust immediately extinguishes a beneficiary's vested right to undistributed trust assets.

The Holts ignore statutory authority discussed by the probate court, which expressly recognizes trustees may delay trust estate distributions (without forfeiting the beneficiaries' interests). When such a delay occurs, section 16341 directs trustees to recognize beneficiaries of estates or trusts are entitled to receive net income equal to their respective "fractional interest in *undistributed* principal assets . . . ." (Italics added.) Specifically, section 16341 provides trustees are statutorily obligated to distribute "a portion of the net income equal to the beneficiary's fractional interest in undistributed principal assets, using values as of the distribution dates and without reducing the values of any unpaid principal obligations." (§ 16341, subd. (a).)

We also find instructive the body of case law discussing what happens when a trustee unreasonably postpones distribution, especially when there is a distribution survivorship clause. "When there is unreasonable delay in distributing an

12

estate, a contingent interest vests at the time distribution should have been made."
(*Estate of Justesen* (1999) 77 Cal.App.4th 352, 358 (*Justesen*), italics omitted.) "The lesson of [*Estate of Taylor* (1967) 66 Cal.2d 855] is that unreasonable delay in distributing an estate cannot defeat the beneficiary's interest. [Citation.] Where there has been unreasonable delay, contingent interests vest at the time distribution *should have* occurred. [Citation.] The purpose of this rule is to advance the established policy favoring prompt distribution of estates, and to carry out the presumed intent of the testator, who contemplated prompt distribution. [Citation.]" (*Justesen, supra,* 77 Cal.App.4th at p. 365; see also *Edwards v. Gillis* (2012) 208 Cal.App.4th 1318, 1329.)

Also instructive is *Salvation Army v. Price* (1995) 36 Cal.App.4th 1619 (*Salvation Army*). In that case, the trustor's will created two testamentary trusts, Trust A and Trust B, for the benefit of her husband for his life. Upon husband's death, the assets in Trust B were to be paid to five specified charities (including the Salvation Army) in amounts that totaled $240,000. (*Ibid.*) The will provided the residue, if any, was to be paid to the trustor's nephew's children, or to their issue (who included defendant). The trustor died in 1971 and was survived by her husband. When he died four years later, Trust B had a value of approximately $179,000, and included an interest in a parcel of land that was the subject of several lawsuits. (*Id.* at p. 1622.) The court directed the trustee to postpone administration of Trust B pending resolution of the lawsuits. (*Ibid.*)

After 18 years passed, the trustee advised the court the lawsuits had concluded and Trust B had increased in value to nearly $900,000. (*Salvation Army, supra,* 36 Cal.App.4th at p. 1622.) The trustee petitioned the court for instructions, indicating the $900,000 should be paid to the five charities proportionately. Defendant opposed the petition, claiming the charities were entitled only to $240,000, plus interest

13

from 1975. The trial court agreed with defendant, and the charities appealed. The appellate court determined the charities had acquired a vested interest in all the Trust B assets, reversing the trial court's ruling the charities had acquired a vested interest in no more than $240,000. (*Id.* at pp. 1622-1625.)

The court in *Salvation Army* noted section 15407, subdivision (a), provides a trust terminates when the terms of the trust expire. The court explained, however, that "[s]ection 15410, subdivision (c), provides, in relevant part, that upon termination of a trust which terminates under its own terms, the trust property shall be distributed 'as provided in the trust instrument or in a manner directed by the court that conforms as nearly as possible to the intention of the settlor as expressed in the trust instrument.' [Citation.] [¶] 'When the objects of a trust have been fully performed the title of the trustee ceases and the legal as well as the equitable title vests in the beneficial owner unless the intention of the creator clearly appears that the legal title should continue in the trustee.' [Citations.] Moreover, '[i]n the absence of any indication to the contrary a testator contemplates prompt distribution.' [Citation.] [¶] In this case Trust B's purpose was to provide [the trustor's husband] with income during his lifetime, and [the trustor's] clear and stated intent was that the Trust B assets were to be distributed upon [husband's] death. The parties do not dispute the probate court's finding that Trust B terminated upon [husband's] death on November 11, 1974. [¶] We conclude, as a matter of law, that upon [husband's] death, the trust terminated after having been fully performed, and the beneficiaries' rights vested. At the time of termination the Trust B assets had a value of approximately $178,000 and were insufficient to fully satisfy the $240,000 in specific pecuniary charitable bequests. Consequently, the specific charitable beneficiaries each received a vested beneficial share of the Trust B assets proportionate to their specific bequests. [The charities] are correct that because at the time the trust terminated and the

14

beneficial interests vested there was no residue, the residuary beneficiaries' interests were extinguished. That actual physical distribution of the Trust B assets was postponed 20 years does not affect the earlier vesting of title upon the trust's termination. [Citation.] Consequently, the court erred in determining that [the charities] were entitled only to $240,000 plus interest thereon and that [defendant] and the other residuary beneficiaries were entitled to all remaining Trust B assets." (*Salvation Army, supra*, 36 Cal.App.4th at pp. 1624-1625.)

Similarly, the purpose of the Trust in this case was to divide the Trust's assets equally between the trustors' two children. Using common estate planning tools, the Trust contained a generation-skipping trust giving Clunies A. Holt income for her lifetime, generated from her half of the Trust, with the principal vesting with her issue upon her death. On the other hand, Denholm was designated an income beneficiary for a short period of time and then his interests in the other half of the Trust vested indefeasibly, notwithstanding any intervening events between then and the final distribution (the delivery) of the Trust's assets. The trustee's delay in distributing Denholm's share cannot defeat his vested interest.

Moreover, as explained in *Salvation Army*, if the Trust's assets should increase in value during the time distribution is postponed, the beneficiaries with vested interests are entitled to a proportional share of those new assets and income. (*Salvation Army, supra*, 36 Cal.App.4th at p. 1625.) San Pasqual is also authorized to distribute "a portion of the net income equal to the beneficiary's fractional interest in *undistributed* principal assets, using values as of the distribution dates and without reducing the values of any unpaid principal obligations." (§ 16341, subd. (a), italics added.) In short, Denholm is still a beneficiary of the Trust, and his half of the Trust's principal may increase in value while his distribution is delayed, and he may be entitled to collect income generated from his undistributed assets.

15

On a final note, we found the express language of the Trust also support the conclusion Denholm's share of the principal was not extinguished or transferred to Clunies A. Holt or her children on October 7, 2010. The Trust specifies that in the event of Denholm's death, his rights as an income beneficiary, and his ability to inherit one-half of the Trust, were not contingent on outliving his parents. Rather, the Trust provided: "In the event of the death of [Denholm] leaving a surviving wife and issue, his *share of income* shall be paid, in equal shares, to his widow and issue." (Italics added, original capitalization omitted.) Denholm's share of the income would "thereafter be paid in trust *to the issue* of Clunies A. Holt in equal shares, and be distributed to them on attaining the ages hereafter set forth." (Italics added, original capitalization omitted.)

In addition, the Trust stated, "The share of principal of the trust estate distributable to [Denholm] shall, in the event of his death, be distributed in trust to his issue, if any, in equal shares, and if none, shall be distributable in trust *to the issue of* Clunies A. Holt in equal shares." (Italics added, original capitalization omitted.) Based on the plain language of the Trust, clearly the trustors never contemplated Clunies A. Holt would be the recipient of Denholm's share of the Trust's income (for five years) or be entitled to interest from Denholm's share of the Trust's principal. Denholm's wife, issue, and nieces and nephews were designated the beneficiaries of Denholm's share if he were to die. We found nothing in the Trust suggesting the trustors intended that Clunies A. Holt receive anything more than income generated from half of the Trust during her lifetime (even if Denholm were to predecease her). Since Denholm is very much alive, it would be inequitable and contrary to the express terms of the Trust for the probate court to award Clunies A. Holt income from Denholm's undistributed share. We affirm the court's order that Clunies A. Holt shall receive income only from her half of the trust assets.

## III

The order is affirmed.  Respondents shall recover their costs on this appeal.


O'LEARY, P. J.

WE CONCUR:


BEDSWORTH, J.


ARONSON, J.